[Crim. No. 28045. Second Dist., Div. Four. Sept. 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR JOHN REYES, Defendant and Appellant.

**COUNSEL**

Michael A. Brush for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Susanne C. Wylie, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—By information, defendant Salvador John Reyes was charged, in count I, with engaging in poolselling and bookmaking, in violation of Penal Code section 337a, subdivision 1; in count II, with keeping and occupying a cafe for the purpose of recording and registering bets and selling pools, in violation of Penal Code section 337a, subdivision 2; in count III, with stake holding, in violation of Penal Code section 337a, subdivision 3; and in count IV, with making and accepting wagers, in violation of Penal Code section 337a, subdivision 6. The information charged that all of these offenses occurred between March 29, 1975, and April 19, 1975.

Defendant Reyes pleaded not guilty. Trial was by jury. Defendant was found guilty on each count as charged, and his motion for a new trial was denied. Proceedings were suspended and defendant was placed on probation for three years under certain conditions, including spending 60 days in the county jail and the payment of a fine of $500. Both of these latter conditions were stayed pending appeal and defendant was granted bail pending appeal. Defendant has appealed from the judgment.

At defendant's trial, the prosecution and the defense stipulated that Los Angeles Police Officer Acosta was an expert in bookmaking. On a number of occasions prior to March 29, 1975, Acosta had observed defendant inside the Villa Perez Bar, located in the Lincoln Heights section of Los Angeles.

Acosta enlisted the aid of a reserve policewoman, Mary Adams. He sent her into the Villa Perez Bar to drink beer and observe what activity, if any, was occurring there. She made her first visit on March 29, 1975, a Saturday. She testified at the trial that, on this occasion, she observed defendant "table-hopping" and exchanging money with various patrons of the bar; that she heard persons speaking to defendant, giving him a series of numbers in combinations of three; that after the numbers were given, money would be exchanged; that defendant would then go to the telephone and make a call. Adams saw defendant use the telephone five to ten times in this fashion. She tried to place a bet herself, but was not successful.

On April 5, 1975, Mary Adams again visited the Villa Perez Bar. On this occasion defendant was standing with two men at the bar. She heard

defendant talking to the men about a method of figuring numbers so that nothing needed to be in writing. On this same occasion, Adams observed defendant near the telephone; persons would form a line and, as they approached defendant, they would show him a hand with the palm exposed, and would then give money to defendant, who would then use the telephone. Adams heard someone say "Davlin's Delight" to defendant, and give him a series of three numbers. She also overheard defendant telling patrons of the bar that "the third is closed."

Again on April 19, 1975, Adams was at the Villa Perez and heard defendant announce that the third was closed but the fourth was open. At the trial, she was shown a photograph depicting a person who was in the bar on April 19, and who had repeated a series of numbers to defendant.

On April 19, Adams reported her observations to Officer Acosta, who formed the opinion that defendant was engaged in bookmaking. On this same date, Acosta went to the Villa Perez, and found defendant with another person at the rear of the bar. Near defendant's feet was a piece of yellow paper which Acosta retrieved. Names of horses and numbers were written on the paper; defendant denied that the paper was his. The person with whom defendant was standing, named Bruno, was photographed, including numbers written on his hand, and that photograph was introduced into evidence.

Acosta arrested defendant. When he was booked and searched, defendant had $314 in his possession. Acosta's partner, Officer Canales, was present when defendant was arrested. Canales confiscated a National Daily Reporter from a patron using the men's room at the Villa Perez.

Acosta testified at the trial concerning the significance of the series of three numbers, spoken by patrons to defendant. The first number would identify the particular race, the second number the handicap position listed in the National Daily Reporter and the third would be the amount of money wagered. Acosta identified "Davlin's Delight" as a popular racing horse.

Defendant testified in his own defense and also presented witnesses on his behalf. Witness Alarcon testified that he had been at the Villa Perez on April 19, 1975, and had not observed any betting activity. He had spoken to Mary Adams there, but there was difficulty in hearing because

the juke box was playing so loud. Alarcon said that Mary Adams had asked him about placing a bet; that he had informed her defendant was a barber—not a bookmaker. Witness Alcantar testified that he was an apprentice bartender at the Villa Perez during March and April of 1975, and that he knew that fund raising for various charitable causes was being conducted at the bar. He, too, had never seen any evidence of bookmaking at the bar. He denied telling Officer Acosta around the middle of March to stop taking the "scratch sheet" out of the men's room.

Defendant, testifying in his own behalf, stated that he was a barber by vocation, making $900 per month. He had been a regular patron at the Villa Perez for many years. During March and April of 1975 he had assisted in fund raising activities there. He often called his wife from the bar, and received calls there. He denied engaging in any bookmaking activities. He was asked on direct examination by his own counsel if he had engaged in any type of betting or bookmaking on the day of his arrest. He replied: "No. Absolutely not." Defendant was then asked by his counsel if he had ever done that at the Villa Perez, and answered: "No. Absolutely not. I am not a bookmaker. I work for a living." He also answered "[n]o" when asked on direct examination if he had ever made book anywhere else.

Defendant subsequently admitted on cross-examination that he had pled guilty to a misdemeanor bookmaking charge about a year prior to the instant case. The incident had not involved Villa Perez. Defendant explained that he had learned his lesson at that time.

Upon rebuttal, Acosta testified that shortly before the trial he had checked the Villa Perez and had had a conversation with Alcantar; that Alcantar had told him he was moving the bookmaking operation to the basement so that the police could not disturb it. Acosta expressed the opinion that Alcantar's function at the bar was not that of a bartender, but of helping operate the book. Acosta also testified that he had arrested defendant on another occasion in 1975 for bookmaking, but that defendant was released.

A patron of the Villa Perez, Carlos Gonzales, testified that on April 19, 1975, he was at the bar planning to place a bet with defendant because he knew defendant was there taking bets.

Los Angeles Police Officer Bustamante testified that, on August 29, 1975, he had placed a bet with defendant at a residence in Los Angeles. Defendant testified concerning this event, and denied taking a wager from Bustamante in August. Acosta returned to the stand to testify that he had been with Bustamante on the August occasion and had formed the opinion, based on the telephone activity at the residence, that defendant was engaged in bookmaking there.

Along with other contentions, defendant raises three evidentiary issues on this appeal.

■ First, defendant contends that the trial court's ruling admitting evidence of defendant's prior misdemeanor bookmaking conviction constituted prejudicial error.

With respect to the admissibility of evidence of defendant's misdemeanor conviction for bookmaking after defendant's "sweeping" denial testimony *on direct examination* of ever having engaged in bookmaking, the issue presented is not unlike that involved in *People* v. *Perry* (1972) 7 Cal.3d 756 [103 Cal.Rptr. 161, 499 P.2d 129]. In *Perry,* a murder case, the defendant on direct examination testified that he had *never* seen anyone shot. The prosecutor was permitted to introduce evidence that defendant kept a loaded shotgun under the front seat of his car with which he had shot himself shortly before his arrest for murder. The *Perry* court held that this was permissible impeachment evidence.

In *Perry,* the argument was made that the impeaching evidence was barred by Evidence Code section 787 which provides that "evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness." The *Perry* court held that Evidence Code section 787 did not bar the impeachment of the defendant as a witness by evidence that he had shot himself because such evidence was relevant to *contradict* the defendant's *direct examination* testimony and, hence, was admissible under Evidence Code section 780, subdivision (i). Evidence Code section 780, subdivision (i), authorizes, as relevant and admissible to attack the credibility of a witness, evidence that establishes the "nonexistence of any fact testified to by him."

*Perry* is dispositive of the issue presented in the instant case—the admissibility of evidence of defendant's prior misdemeanor conviction of bookmaking to impeach defendant as a witness.

*Perry* and the case at bench are examples of the doctrine of limited or selective admissibility authorized by Evidence Code section 355—evidence may be *admissible* for one purpose or on one theory even though it is *inadmissible* for other purposes or on other theories. ██ Thus, evidence of a specific instance of a witness' conduct is inadmissible under Evidence Code section 787 to impeach the witness as proof of a trait of his character but may become admissible to impeach the witness pursuant to Evidence Code section 780, subdivision (i), by proving *false* some portion of his testimony.

It is significant in the case at bench that defendant's testimony that he had *never* engaged in bookmaking was elicited on *direct examination.* Had this testimony been elicited by the prosecutor on cross-examination, the impeaching evidence of defendant's prior misdemeanor conviction for bookmaking would have been *inadmissible* by virtue of the rule that a cross-examiner may not elicit testimony on a collateral matter for the purpose of contradicting that testimony or proving it to be false pursuant to Evidence Code section 780, subdivision (i). (*People* v. *Taylor* (1972) 8 Cal.3d 174 [104 Cal.Rptr. 350, 501 P.2d 918]; *People* v. *Lavergne* (1971) 4 Cal.3d 735 [94 Cal.Rptr. 405, 484 P.2d 77]; *People* v. *Benjamin* (1974) 40 Cal.App.3d 1035 [115 Cal.Rptr. 668]; see also *People* v. *Disbrow* (1976) 16 Cal.3d 101, 109-110 [127 Cal.Rptr. 360, 545 P.2d 272].)

██ Defendant's second evidentiary contention concerns the admissibility of testimony by Bustamante and Acosta that defendant had committed a subsequent uncharged offense—bookmaking—on August 29, 1975.

The record shows that, prior to the trial court's ruling admitting this testimony, there was discussion between defense counsel and the trial judge concerning the August 29 offense, for which defendant had been arrested. The trial court expressed the view that the evidence was admissible as an attack on credibility, again adverting to defendant's sweeping claim of innocence, made during his direct examination. It was also asserted that such evidence could properly be employed as showing knowledge by defendant of bookmaking activity. Defendant objected to evidence that he had committed a subsequent bookmaking offense, even if admitted for a limited purpose (as the jury was ultimately instructed), claiming that defendant's credibility was no longer in issue because he had admitted on cross-examination that he had been convicted of a prior bookmaking offense.

Evidence that defendant committed a subsequent bookmaking offense was admissible to attack defendant's credibility as a witness on the same basis that evidence of the prior offense was admitted, to wit, to disprove the truthfulness of a portion of his testimony given on direct examination. (Evid. Code, § 780, subd. (i).) The fact that defendant admitted on cross-examination that he had committed the *prior* uncharged offense did not remove from the case the issue of his credibility.

Defendant contends also that evidence as to the *subsequent* uncharged offense should have been excluded as cumulative evidence. But such evidence was not entirely cumulative in nature. Although the evidence did tend to prove the nonexistence of a fact testified to by him—i.e., that he had never engaged in bookmaking activities—which was the scope of the evidence relating to the prior bookmaking evidence, this subsequent-offense evidence also had a noncumulative relevancy to attack defendant's credibility as a witness, albeit pursuant to Evidence Code section 780, subdivision (i), also. It tended to dispute defendant's testimony on cross-examination that he had reformed after suffering the prior bookmaking conviction. This evidence is not made inadmissible by other rules that restrict the use, for impeachment purposes, of evidence that a witness committed a misdemeanor. Evidence Code section 787 has no application since it precludes evidence of specific instances of a witness' conduct to attack credibility only if such evidence is "relevant only as tending to prove a trait of his character." (See *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545] (misdemeanor conviction of theft).)

In admitting evidence that defendant had committed a subsequent offense of bookmaking, the trial judge ruled that such evidence was relevant on the issue of defendant's credibility as a witness and also on the issue of defendant's knowledge of bookmaking. The trial court gave CALJIC Instruction No. 2.50 that told the jury that such evidence was received for the limited purpose of showing "[t]hat the defendant had knowledge or possessed the means that might have been useful or necessary for the commission of the crime charged." Defendant attacks this second basis of admissibility on the ground that its relevancy was outweighed by its great prejudicial effect.

Although Evidence Code section 1101, subdivision (b), authorizes the admissibility of evidence that a defendant committed another crime when relevant to prove some fact such as "knowledge," we deem the use

of this ground of admissibility in the instant case to be error. The evidence was *not* relevant to establish defendant's *knowledge* since the issue of "knowledge" had been removed from the case by reason of defendant's cross-examination testimony admitting that he had pled guilty to a prior misdemeanor bookmaking offense. Evidence is *not* relevant in a case unless offered on a *contested* issue of fact. By reason of Evidence Code section 210, that defines "relevant evidence" in terms of evidence "having any tendency in reason to prove or disprove any *disputed fact*" (italics added), evidence that is offered on an *uncontested* issue is *irrelevant.* (See *People* v. *Yanikian* (1974) 39 Cal.App.3d 366 [114 Cal.Rptr. 188]; *People* v. *Gonzales* (1968) 262 Cal.App.2d 286 [68 Cal.Rptr. 578].) But since the subsequent-offense evidence introduced against defendant was relevant on the issue of defendant's credibility as a witness, the trial court's error of relying for admissibility partly on an erroneous ground, must be considered nonprejudicial unless other factors require a different result.

 Defendant's major attack upon the introduction of evidence of his commission of the subsequent bookmaking offense is in terms that it was an abuse of discretion under Evidence Code section 352 because of the manifest prejudicial effect of such evidence that far outweighed its probative value. Defendant seeks to equate the instant case with the rules that have evolved with respect to the use of evidence of felony convictions to impeach a defendant as a witness and the use of other-crimes evidence (mainly felonies) under Evidence Code section 1101, subdivision (b). Defendant relies upon cases such as *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833] and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], dealing with evidence of a defendant's felony conviction offered to impeach him as a witness, and *People* v. *Guerrero* (1976) 16 Cal.3d 719 [129 Cal.Rptr. 166, 548 P.2d 366] and *People* v. *Gibson* (1976) 56 Cal.App.3d 119 [128 Cal.Rptr. 302], dealing with other-crimes evidence offered against a defendant on an issue other than witness credibility.

The *Rist, Beagle, Guerrero* and *Gibson* cases point out the manifest danger of undue prejudice to a defendant from other-crimes evidence— whether offered as felony convictions to impeach a defendant as a witness or offered on substantive issues such as identity, knowledge or intent. In each of these cases it was held that the danger of undue prejudice to the defendant substantially outweighed the probative value of such evidence so that the admission of the evidence under the

particular facts constituted an abuse of discretion under Evidence Code section 352.

But the principles enunciated in *Rist, Beagle, Guerrero* and *Gibson* do not compel a similar result in the case at bench. These cases do not hold that, under different circumstances, it is an abuse of discretion to admit felony conviction evidence to impeach defendant as a witness or to admit evidence that defendant committed an offense other than the one charged to prove a contested issue other than through the use of such evidence as propensity or character trait evidence.

In the case at bench, defendant points out that the other-crimes evidence offered to impeach him as a witness was similar to the charged crime—bookmaking—and hence posed the same danger of undue prejudice as a felony conviction, similar to the offense charged, as posed in *Rist*. But here, the probative value of the impeaching evidence is different. Evidence of the commission of the misdemeanor offense is not offered as evidence of a character trait to attack credibility—precluded by Evidence Code section 787—but as evidence that contradicts and disproves two items of specific testimony given by defendant, his testimony that he had never engaged in bookmaking and his testimony that, after the first misdemeanor conviction for bookmaking, he had reformed. The relevancy of this misdemeanor evidence to attack credibility under the principle of testimonial contradiction (Evid. Code, § 780, subd. (i)) has far greater probative value for witness impeachment than that of evidence of a felony conviction, deemed relevant to attack the credibility of a defendant as a witness because it establishes a character trait. (See *People* v. *Gardner* (1975) 52 Cal.App.3d 559 [125 Cal.Rptr. 186] (in a rape prosecution, evidence of defendant's prior felony conviction of manslaughter by violence admitted to contradict defendant's testimony that he would never think about committing any kind of crime against a person, although evidence of such felony conviction initially had been ruled inadmissible to attack defendant's credibility as a witness under Evid. Code, § 788 by an *in limine* ruling under Evid. Code, § 352).)

■ Defendant urges the point that his cross-examination about subsequent criminal conduct should be considered a violation of his privilege against self-incrimination, guaranteed by the United States and the California Constitutions. This point is without merit. "A defendant who takes the stand to testify in his own behalf waives the privilege

against self-incrimination to the extent of the scope of *relevant cross-examination.* [Citations.] 'It matters not that the defendant's answer on cross-examination might tend to establish his guilt of a collateral offense for which he could still be prosecuted. [Citations.]' " [Italics added.] (*People* v. *Thornton* (1974) 11 Cal.3d 738, 760 [114 Cal.Rptr. 467, 523 P.2d 267]; cf. *People* v. *James* (1976) 56 Cal.App.3d 876 [128 Cal.Rptr. 733] (a defendant's alibi testimony held an implied denial of guilt to constitute a waiver of self-incrimination privilege to permit cross-examination regarding flight and evasion of prosecution as relevant cross-examination about facts indicating guilt).)

■ Defense counsel on appeal is the same counsel that represented defendant at trial. He characterized his broad question to defendant as to whether defendant had *ever* engaged in bookmaking, as an error which resulted in "opening the door" to the misdemeanor conviction evidence, and contends here that defendant was thereby deprived of adequate representation by counsel, guaranteed by the United States and California Constitutions. The trial judge had previously agreed with defense counsel that evidence of a defendant's misdemeanor conviction could not properly be employed for impeachment purposes against defendant as a witness. (See Evid. Code, § 787; *Lent, supra,* 15 Cal.3d 481.) But this ruling was prior to defense counsel's question to defendant. Defense counsel immediately recognized that he had made a major tactical error, and sought to have the testimony stricken, arguing, among other things, that defendant might have misunderstood the question. Defendant now claims that the trial court judge should have stricken the testimony pursuant to Evidence Code section 352. That there was no abuse of discretion in the trial court's refusal to strike the testimony is demonstrated by the similar situation encountered in *Gardner, supra,* 52 Cal.App.3d 559.

With respect to defendant's claim of inadequate counsel, the record before us amply demonstrates that the claim is without merit. Despite the overly broad question posed to defendant concerning prior bookmaking activities, the record before us shows that trial counsel for defendant far exceeded minimum standards of representation of his client. For example, it is clear from the number and the nature of his objections to the introduction of evidence that defense counsel was well-versed in conducting a criminal defense. The rule has been stated recently in *People* v. *Steger* (1976) 16 Cal.3d 539, 551-552 [128 Cal.Rptr. 161, 546 P.2d 665], that, in assessing the constitutional adequacy of

representation, "[g]enerally, a single lapse of skill will not be held to have resulted in denial of a fair trial. [Citation.]" That observation is particularly applicable to the situation before us. Defendant's representation has been more than adequate.

■ Defendant attacks as hearsay the ruling of the trial court in permitting Mary Adams to testify that she heard persons in the Villa Perez Bar talking to defendant—relating a series of numbers in combinations of three. After stating the three numbers, these persons handed money to defendant. Evidence of these statements of bar patrons to defendant was not hearsay evidence. They were not offered for the truth of any matter stated by such statements but for a relevant nonhearsay purpose of showing directions to defendant to use the money to place bets in accordance with the numbers stated. A declarant's words of direction or authorization do not constitute hearsay since they are not offered to prove the truth of any matter asserted by such words. (See Jefferson, Cal.Evidence Benchbook (1972) § 1.7.)

The nonhearsay use of the bar patrons' statements to defendant was relevant in light of other evidence offered that the numbers spoken to defendant directed him with respect to the use to which he was to put the money handed to him—the race, the horse, and the character of the bet in terms of the outcome of the race. The bar patrons' words were thus relevant merely because they were spoken. Here the spoken words were part of the issue making up the elements of the bookmaking offenses charged against defendant—the placing of bets with defendant and his stakeholding. (See *People* v. *Jones* (1962) 205 Cal.App.2d 460. [23 Cal.Rptr. 418]; *Bank of America* v. *Taliaferro* (1956) 144 Cal.App.2d 578 [301 P.2d 393].)

■ Defendant also complains about the trial court's ruling permitting Officer Acosta to testify to what Mary Adams had told *him* about what she overheard the bar patrons telling defendant in the Villa Perez. Defendant's hearsay and irrelevancy objections to Officer Acosta's testimony should have been sustained. The trial court overruled the hearsay objection on the ground that Mary Adams' statements to Officer Acosta were not being received for the truth of the matter stated but for the nonhearsay purpose of providing probable cause to Officer Acosta to arrest defendant. (See *People* v. *King* (1956) 140 Cal.App.2d 1 [294 P.2d 972] (informer's statement to police officer offered on issue of probable cause to make a warrantless search held to be nonhearsay).) But the

principle set forth in *King* is not applicable to the case before us. Here the legality of defendant's arrest was not in issue. Mary Adams' statements to Officer Acosta were simply *irrelevant* for the *nonhearsay* purpose offered since they had no tendency in reason to prove any disputed issue of fact in the action. (Evid. Code, § 210.) But since Mary Adams had testified as a witness to what she had heard in the Villa Perez Bar, the erroneous admission of Acosta's testimony cannot be deemed prejudicial.

█ Another contention advanced by defendant is that the trial judge should have disqualified himself due to bias against defendant. It appears that the trial judge took a dim view of defendant's sweeping claim of innocence, made on the stand while defendant knew he had been previously convicted of bookmaking. While the trial judge expressed his anger at this turn of events, the record as a whole does not demonstrate that the trial judge acted as the result of bias against defendant. █ " '[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action.' " (*People* v. *Yeager* (1961) 55 Cal.2d 374, 391 [10 Cal.Rptr. 829, 359 P.2d 261].) The point of *Yeager* is that an opinion on the part of the trial judge formed *after* hearing evidence cannot be used as a basis for disqualification.

█ In the instant case, there is no evidence that the trial judge communicated his distaste for defendant to the jury; defense counsel did file an affidavit during the trial to the effect that remarks of the trial judge made at bench were sufficiently loud to be overheard by the jury. The trial judge immediately questioned the jurors on this subject, and received no indication that they had in fact overheard any of his remarks. He therefore denied defense counsel's request for a mistrial; the denial was proper.

█ Another evidentiary contention of defendant is that the newspaper, the National Daily Reporter, should not have been admitted into evidence as it "misled" the jury and was never in fact connected with defendant. But the record shows that the document was corroborative and illustrative of the testimony of Carlos Gonzales, who stated at trial that he had used the newspaper intending to place a bet with defendant. In addition, the document was admissible for the limited

purpose of explaining Officer Acosta's expert testimony regarding the meaning of numbers in a series of three. Such use of the document does not violate the hearsay rule since the newspaper is not being received in evidence to establish the truth of any facts stated therein.

In many cases, National Daily Reporters, found on the premises of alleged bookmaking establishments, have been admitted into evidence as relevant and material to the charges made. (See, i.e., *People v. Smith* (1952) 113 Cal.App.2d 416, 420 [248 P.2d 444]; *People v. Vertlieb* (1943) 22 Cal.2d 193, 197 [137 P.2d 437]; *People v. Tereno* (1962) 207 Cal.App.2d 246, 252-253 [24 Cal.Rptr. 501].)

There have been few attempts at any analysis to determine whether the admission into evidence of a document, such as the National Daily Reporter, constitutes a violation of the hearsay rule. Certainly, if the newspaper is being received to prove the truth of facts stated therein, such as races being run at named racetracks or the names of horses and jockeys entered in particular races, it constitutes hearsay statements of a declarant, the editor of the paper.

If used in a *nonhearsay* manner, however, as illustrative of personal-knowledge testimony of a witness, or as matter relied upon by an expert in expressing his opinion, as in the case before us, the hearsay rule is avoided. In some instances, the evidence may indicate a defendant's conduct of possessing the newspaper under circumstances where it can be concluded that such conduct manifests a belief in the truth of the statements contained therein to make the editor's hearsay newspaper statements admissible against a party-defendant under the adoptive-admission exception to the hearsay rule. (Evid. Code, § 1221.)

 Defendant also claims that the evidence was insufficient to submit counts I and II to the jury, and that his motion to dismiss (pursuant to Pen. Code, § 1118.1) should have been granted. Count I referred to bookmaking, and count II, to keeping a room for bookmaking purposes. It should be noted that it is only necessary to establish the taking of one bet to show a violation of Penal Code section 337a, subdivision 1, and the bet need not be written. (See *People v. Chaney* (1957) 147 Cal.App.2d 740, 741 [305 P.2d 955].) In addition, it is only necessary to establish *occupancy* of premises for illegal purposes rather than ownership. (*People v. Covert* (1963) 219 Cal.App.2d 363, 367 [33 Cal.Rptr. 236].)

Here the evidence established that defendant was observed by reserve police officer Adams exchanging money with patrons of the Villa Perez, following which he would use the phone. There was evidence that he had printed cards with the telephone number of this bar on the cards, and that he was often on the premises and had a key to the premises. There was substantial evidence to support a conviction on counts I and II. Hence, the trial court did not err in denying defendant's motion to dismiss. (*People* v. *Valerio* (1970) 13 Cal.App.3d 912, 919 [92 Cal.Rptr. 82].)

Defendant makes the contention that there should have been an investigation of the interpreter's qualifications before the testimony of Gonzales, through the interpreter, was allowed; the record shows but one comment by counsel on the accuracy of one statement made in Spanish, but no objection to its admission into evidence. Thus, no objection having been made below, the issue is not properly before us on appeal.

Finally, defendant contends that the information filed against him was vague as to time of commission of the alleged offenses and was defective for that reason. The information alleged the bookmaking offenses to have been committed "between March 29, 1975 and April 19, 1975." This appears sufficiently informative of the times alleged, and defendant has made no showing here that he was in any way prejudiced by the allegations of the information.

The judgment appealed from is affirmed.

Kingsley, Acting P. J., concurred.

**DUNN, J.**—I concur in affirmance of the judgment.

However, I see no reason to publish this opinion since it does not meet the standards set out in rule 976 (b) of the California Rules of Court.

A petition for a rehearing was denied October 5, 1976, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1976.