75 Cal.Rptr.2d 806 (1998)
64 Cal.App.4th 1107
The PEOPLE, Plaintiff and Respondent,
v.
Ernie LUCERO et al., Defendants and Appellants.
No. B110574.
Court of Appeal, Second District, Division Seven.
June 15, 1998.
Review Denied September 30, 1998.
Jonathan B. Steiner, Nancy Gaynor, under appointment by the Court of Appeal, Los Angeles, for Defendant and Appellant Lucero.
*807 Shawn O'Laughlin, under appointment by the Court of Appeal, Anacortes, WA, for Defendant and Appellant Maldonado.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Joseph P. Lee, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
JOHNSON, Associate Justice.
Defendant Ernie Lucero appeals from his conviction on two counts of robbery and from the finding the offenses were committed while he was on bail. Co-defendant Jessica Maldonado appeals from her robbery conviction. We affirm.

FACTS AND PROCEEDINGS BELOW

A. The Gas Station Robbery

A man wearing a stocking mask entered the customer service area of a gas station in Pomona, pulled a gun and ordered the attendant to hand over the station's money. The attendant, Mohammed Islam, complied with the robber's demand. The robber then directed Islam into the storeroom and told him to stay there. After waiting a couple of minutes, Islam peeked out the storeroom door. He saw the robber, with his mask off, leap a wall into an alley. Peering over the wall, Islam saw the robber jump into an old Cadillac driven by a woman. As the pair drove away, Islam wrote down the license number.
When the police arrived, Islam described the robber as approximately six feet tall, 185 pounds, with black hair and no mustache. He described the driver as a slim blackhaired Hispanic woman in her middle thirties. Islam was sure the Cadillac was twotoned, burgundy or brown and white. He was not sure which color was on top. He wrote down the license number as 026ZVW but told the police the last two letters could have been V or B.
Three days after the robbery, a Pomona police officer spotted a white over burgundy Cadillac, license number 026ZBW being driven by defendant Lucero. The officer stopped the car and searched it Defendant and the car were then released. In the course of the stop, the officer learned the car was registered to Lucero at an address in a trailer park near the location of the gas station robbery.
Islam was never able to identify Lucero as the robber or Maldonado as the get-away driver. The closest he could come was to say Lucero had the same build as the robber and Maldonado had the same build and hair color as the driver.

B. The Quality Burgers Robbery

Approximately three weeks after the gas station robbery, a man entered the Quality Burgers restaurant in Pomona wearing part of a stocking over his face and a dark baseball cap. The man pointed a gun at one of the workers, Rufo Casterjon, and said, "Give me the money." Casterjon took approximately $158 from the register and gave it to the robber. The robber then ordered Casterjon and his coworker to the back of the kitchen. As soon as the robber left, Casterjon called the police.
Officer William Spencer, who was investigating the gas station robbery, heard the police broadcast about the robbery at Quality Burgers and decided to drive over to Lucero's trailer park which was only three to five minutes from the restaurant. Within eight minutes of the broadcast Lucero and Maldonado, in the Cadillac, entered the trailer park. They sped past Spencer and stopped in front of Lucero's trailer. Spencer ordered Lucero and Maldonado out of the car at gun point. While the two suspects lay prone on the ground about four feet apart, Spencer heard Lucero tell Maldonado, "Just say ..." At the scene, Maldonado took $144 from her pants and handed it to Officer Spencer. Later, after Maldonado was given her Miranda warnings and agreed to speak, Spencer asked her, "Where is the rest of the money?" to which she replied the money was "used to buy booze." A search of the car turned up approximately $10 to $15 worth of wine and beer, a dark colored baseball hat and a BB gun but no stocking mask.
The police took Casterjon to the trailer park to see if he could identify Lucero as the *808 robber. Casterjon said he was 80 percent sure Lucero was the robber, however at the preliminary hearing Casterjon testified Lucero was not the man who robbed him and at trial he could only say Lucero was "more or less" the size of the robber.
While the arrest was proceeding at the trailer park, Officer George Mundy was investigating the crime scene at Quality Burgers. Mundy testified he asked a witness if the robber had touched anything on the counter and the witness pointed out a shoe print the robber left on the counter. Mundy lifted the shoe print as well as some nearby fingerprints. He concluded from the location of these prints the robber had vaulted over the counter into the work area, stepping on the counter as he did so. Spencer testified he compared the shoe print to the soles of the shoes Lucero was wearing when he was arrested and "they appear[ed] to be the same." Lucero's objections to the testimony of Mundy and Spencer were overruled.
Following a jury trial, Lucero was convicted of two counts of robbery; Maldonado was convicted of the Quality Burger robbery and of giving a false name to the police when she was arrested.
Following his conviction on the robbery counts, a hearing was held to determine the on-bail enhancement allegation against Lucero. Based on the record before it and Lucero's response to certain admonitions by the court, the court found the on-bail allegation true.

DISCUSSION

I THE TESTIMONY OF OFFICER MUNDY ABOUT WHAT A WITNESS TOLD HIM AND THE LAY OPINION TESTIMONY OF OFFICER SPENCER REGARDING THE SHOE PRINT, EVEN IF IMPROPERLY ADMITTED, DO NOT REQUIRE REVERSAL.

A. Officer Mundy's Testimony a Witness Told Him the Robber Left a Shoe Print on the Counter Was Inadmissible Whether Characterized As Hearsay or Nonhearsay.

In explaining how he happened to lift the print of a shoe from the counter at Quality Burgers, Officer Mundy testified: "I asked one of the witnesses what the suspect touched in relation to the counter and the witness pointed to certain areas and pointed to the shoe print ... that was left by the suspect that came into the restaurant[.]" Lucero objected to this testimony as hearsay but the trial court overruled the objection on the ground the statement was not introduced to prove the truth of the matter asserted but to explain the conduct of the officer.
The People concede if the statement was offered to prove the truth of the matter assertedthe robber stepped on the counter and left the shoe printit would be inadmissible hearsay. The People, however, urge us to accept the trial court's rationale the evidence was admitted for the nonhearsay purpose of "showing [Mundy's] good faith or the reasonableness of his conduct." In support of this argument, the People cite People v. King (1956) 140 Cal.App.2d 1, 4-5, 294 P.2d 972 which upheld the introduction of statements made to an officer by a confidential informant on the ground the statements were admitted for the nonhearsay purpose of establishing "reasonable cause to justify an arrest."
The problem with the People's argument is that even if the witness's statement to Officer Mundy was offered for a nonhearsay purpose it still had to be relevant to be admissible. As the court explained in People v. Reyes (1976) 62 Cal.App.3d 53, 67-68,132 Cal.Rptr. 848, "the principle set forth in King is not applicable [if] the legality of defendant's arrest was not in issue." In the present case, as in Reyes, the jury was not asked to determine whether the police had probable cause to arrest Lucero. Therefore, the witness's statement to Mundy about the suspect stepping on the counter was simply irrelevant for the nonhearsay purpose offered because it had no tendency in reason to prove any disputed issue of fact in the action. (Evid. Code § 210; Reyes, supra, 62 Cal.App.3d at p. 68, 132 Cal.Rptr. 848.)
The trial court's error in admitting this evidence, however, was harmless. In *809 overruling Lucero's objection, the court explained the evidence was not being admitted for the truth of the matter asserted but "simply ... to explain the subsequent conduct of the officer and for that limited purpose it may be received." Furthermore, there was other evidence Unking Lucero to the Quality Burgers robbery. When driven to the trailer park immediately after the robbery, Casterjon told police he was 80 percent sure Lucero was the robber. When Lucero and Maldonado were first taken into custody, Officer Spencer heard Lucero trying to pass a fabricated story to Maldonado. The robber wore a dark-colored hat and displayed a gun. A dark-colored hat and gun were found in Lucero's Cadillac when he was arrested. The robber took approximately $158 from Quality Burgers. Maldonado had $144 on her at the time of her arrest and Spencer found approximately $14 of liquor in the car. Lucero's arrival at the trailer park neatly fit the amount of time it would take to drive there from Quality Burgers with a short stop to buy beer and wine. Viewed in this light, the shoe print evidence was not the critical evidence linking Lucero to the robberies, as Lucero claims. Indeed, the prosecutor did not even mention the shoe print evidence in his initial closing argument and only referred to it briefly in rebuttal to Lucero's closing argument.

B. Officer Spencer's Lay Opinion the Sole of Lucero's Shoe Appeared the Same As the Shoe Print on the Counter Was Admissible.

Again over Lucero's objection, Officer Spencer was allowed to testify he compared the soles of the shoes Lucero was wearing when he was arrested with the shoe print on the counter at Quality Burgers and, in his opinion, they appeared to be the same. Spencer pointed out to the jury the characteristics of the shoes and the shoe print which led him to this conclusion.
Evidence Code section 800 provides: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: (a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony." It is undisputed Officer Spencer is not an expert in shoe print comparison.
No reported California case has addressed the question whether a lay person can testify to an opinion based on comparison of a shoe and a shoe print. It appears however the courts in other states which have considered this question have all held such testimony is admissible. (E.g., Moore v. State (1996) 323 Ark. 529, 915 S.W.2d 284, 295; State v. Jeter (La.App.1992) 609 So.2d 1019, 1022-1023; State v. Johnson (1990) 120 N.J. 263, 576 A.2d 834, 850-851; Halbig v. State (Ind.1988) 525 N.E.2d 288, 291.) Furthermore, even if the testimony should have been excluded, the error was harmless for the reasons explained above.

II.-IV.[**]

DISPOSITION
The judgment is affirmed.
LILLIE, P.J., and WOODS, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions to be published are the summary, section I, and the Disposition.
[**] See footnote *, ante.