Filed 5/3/16  P. v. Gathright CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EMMANUEL GATHRIGHT,<br><br>    Defendant and Appellant. | 2d Crim. No. B258727<br>(Super. Ct. No. BA410472-01)<br>(Los Angeles County) |

Emmanuel Gathright appeals a judgment following conviction of three counts of second degree robbery, with findings that he committed the crimes to benefit a criminal street gang, a principal personally used a firearm during commission of the crimes, and he suffered a prior serious felony and strike conviction.  (Pen. Code, §§ 211, 186.22, subd. (b)(1)(C), 12022.53, subd. (b), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)[1]  We modify the judgment to award one additional day of actual custody credit, but otherwise affirm.

*FACTUAL AND PROCEDURAL HISTORY*

During the afternoon of February 1, 2012, two Black men entered Zeus Roby Jewelry store in Los Angeles.  The men, later identified as Gathright and Len Breazean, wore dark-colored hooded sweatshirts.  Breazean called store owner Hugo Perez aside, pointed a handgun at Perez's head, and demanded that he open the store safe.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

After Perez opened the safe, Breazean removed cash, gold, and jewelry and placed the items inside his sweatshirt pocket.

While Breazean emptied the safe, Gathright stood in front of the counter where employees Jessica Banda and Bryon Escobar worked. Gathright informed Breazean that Escobar had a taser and Gathright then directed Banda and Escobar "not to move." Banda and Escobar believed that Gathright held a firearm because he "was pointing" at them through his sweatshirt. Gathright also looked outside the store during the robbery.

After taking items from the safe, Breazean took gold pieces from Banda's desk and then took Perez's and Escobar's wallets. Gathright and Breazean ran from the store to a waiting black-colored Ford Mustang automobile. As he fled, Breazean dropped the wallets. Perez and Escobar gave chase; Perez fired the taser at Breazean, who responded by firing the handgun at Perez. Perez was not injured, but Breazean was struck by the taser dart. He was "shaking," and had difficulty walking due to the dart. The getaway vehicle left quickly with Breazean and Gathright inside.

Perez and Escobar returned to the jewelry store and telephoned for police assistance. A surveillance camera recorded the robbery but the video-recording did not clearly reflect Gathright's facial features, only his physical stature and build. At trial, the prosecutor played the video-recording of the robbery.

In photographic lineups, Perez, Banda, and Escobar later identified Breazean as the robber holding the firearm, but they were unable to identify Gathright. The three victims were also unable to identify Gathright at trial. Escobar explained that his attention was focused on the robber holding the firearm.

In March 2013, Los Angeles Police Detective Adrian Lopez questioned Gathright in a recorded interview. Gathright admitted membership in the "135 Piru" criminal street gang, but denied involvement in the jewelry store robbery. During questioning, Lopez informed Gathright that he had viewed the jewelry store surveillance recording. Lopez also employed a ruse, stating that Breazean had implicated Gathright in

2

the robbery and that police investigation revealed Gathright's DNA in the Ford Mustang automobile.

Gathright then admitted visiting the jewelry store with Breazean "to sell some jewelry" because Breazean knew Perez. The visit "went all bad," however, when Breazean displayed his firearm. Gathright denied taking any jewelry and denied knowing beforehand that Breazean was armed.

Los Angeles County Sheriff's Detective Marc Boisvert testified as an expert regarding criminal street gangs. He stated that Gathright was a self-admitted member of the 135 Piru gang and that Breazean was associated with "Blood" and "Piru" gangs. Boisvert testified that the primary activities of the Piru gang were drug sales, robberies, assaults, burglaries, and murders. Based upon a hypothetical similar to the evidence presented at trial, Boisvert opined that Gathright and Breazean committed the robbery to benefit the 135 Piru criminal street gang.

The jury convicted Gathright of three counts of second degree robbery and found that he committed the crimes to benefit a criminal street gang, and that a principal personally used a firearm during commission of the crimes. (§§ 211, 186.22, subd. (b)(1)(C), 12022.53, subd. (b).) In a separate proceeding, Gathright admitted that he suffered a prior serious felony and strike conviction. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

The trial court sentenced Gathright to 25 years imprisonment, consisting of an upper five-year term (then doubled), 10 years for the criminal street gang enhancement, and five years for the prior serious felony conviction. The court imposed and stayed a 10-year term for the firearm use enhancement and imposed 20-year terms to be served concurrently for the remaining two robbery counts. The court also imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), a $120 court security assessment, and a $90 criminal conviction assessment. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.) It awarded Gathright 508 days of presentence custody credit, consisting of 442 actual days of credit and 66 days of conduct credit.

Gathright appeals and contends that 1) the trial court erred by permitting Officer Lopez to testify that he suspected that Gathright was the second robber, and 2) he is entitled to one additional day of presentence custody credit.

*DISCUSSION*

*I.*

Gathright argues that the trial court erred by overruling his hearsay objection to Officer Lopez's testimony that, during his investigation, he suspected that Gathright was the second robber of the jewelry store. Gathright claims the evidence is either hearsay or irrelevant and was prejudicial pursuant to any standard of review. (*People v. Reyes* (1976) 62 Cal.App.3d 53, 67-68 [witness's statements to police officer inadmissible as irrelevant and hearsay].) He asserts that the evidence against him is slight and rests upon a false confession induced by ruses and false police claims of evidence. Gathright contends that the error denies him a fair trial and due process of law pursuant to the United States and California Constitutions.

Over a defense hearsay objection, Lopez confirmed that "during the course of [his] investigation," he suspected Gathright was the second robber. Later, Lopez explained his persistence in investigating although the store employees could not identify the second robber: "Based on the information I received, the investigation that I did over the course of . . . several months, it appeared that Mr. Gathright was the second suspect in that robbery."

The trial court properly overruled Gathright's hearsay objection because Lopez's statement was not hearsay, i.e., it was not offered to prove the truth of the matter stated therein. (Evid. Code, § 1200, subd. (a); *People v. Sandoval* (2015) 62 Cal.4th 394, 427.) "'"Hearsay evidence" is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.'" (*Sandoval*, at p. 427, citing Evidence Code section 1200, subdivision (a).) In his testimony, Lopez did not refer to any statement made by any witness or informant and he did not provide any basis for his belief that Gathright "appeared" to be "the second suspect."

4

The trial court also did not abuse its discretion by impliedly determining that Lopez's testimony was relevant to explain why he persisted in investigating Gathright despite the lack of identification evidence. Relevant evidence is evidence that tends to prove or disprove any disputed fact that is of consequence to the determination of the action. (Evid. Code, § 210; *People v. Tully* (2012) 54 Cal.4th 952, 1010.) Lopez's few lines of testimony were relevant to explain his reasonableness and good faith in investigating Gathright although no witness could identify him as the second robber.

In any event, Lopez's brief testimony could not have prejudiced Gathright pursuant to any standard of review or test of prejudice. In this respect, we agree with the concurring opinion that Gathright's confession compels that we affirm the trial court. Lopez testified that, based upon his investigation, it *appeared* that Gathright was a *suspect*. Lopez did not testify that Gathright was the second robber nor did he refer to any out-of-court witness statements implicating Gathright. Gathright confessed to the robbery, providing details that only the second robber could have known; he stated that Breazean greeted Perez "like he knew the guy," and the two men walked toward the back of the store. Gathright also stated that he saw Perez strike Breazean with a taser and that Breazean did not fall. Gathright added that he left the store before Breazean and entered the back seat of the getaway vehicle, a convertible Mustang automobile. The jury also viewed the surveillance recording of the robbery and could compare Gathright's stature and build to that of the second robber.

For the first time in his reply brief, Gathright complains of testimony elicited from Lopez during cross-examination regarding a description of the second robber's clothing obtained from "one of the witnesses" or "Mr. Taylor." Gathright elicited this testimony and did not object to Lopez's answer. He has forfeited any argument to this point on appeal. (*People v. Valdez* (2012) 55 Cal.4th 82, 130 [general rule].)

## II.

Gathright contends that he is entitled to one additional day of actual presentence custody credit, for a total of 443 days. The Attorney General correctly

5

concedes. (§ 2900.5 [defendant is entitled to presentence custody credit for each day served in custody, including day of arrest and day of sentencing].)

We modify the judgment to reflect an award of 443 days of actual custody credit, plus 66 days of conduct credit, for a total of 509 days. The trial court shall amend the abstract of judgment accordingly and forward the amended abstract to the Department of Corrections. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.




GILBERT, P.J.


I concur:



YEGAN, J.


6

PERREN, J.

I concur in the result.

Appellant's guilt is well-shown by evidence of the corpus of the crime and appellant's detailed confession - even if none of the witnesses could identify him. I am fully satisfied that by any measure the conviction should stand. I respectfully disagree with the majority that Officer Lopez's testimony concerning "the second person," that person's name, and that he continued his investigation because "it appeared that Mr. Gathright was the second suspect in the robbery," was either relevant or anything but inadmissible hearsay.

Appellant's identity as a co-perpetrator of the crimes was the only matter in issue. No matter or fact was in issue concerning why Officer Lopez investigated appellant (Evid. Code, § 210), nor Lopez's state of mind. (Evid. Code, § 1250.) Any such "issue" was because the district attorney made it one[1]. The officer's bona fides were not questioned by appellant. Why the officer investigated appellant and how, why and from whom the officer learned appellant's name had nothing to do with firsthand information concerning appellant's involvement in the charged crimes. What was proved was that the officer knew it was appellant based on all that he heard; that was irrelevant. (*People v Lucero* (1998) 64 Cal.App.4th 1107, 1109-1110.)

Worse, the jury was informed that "Based on the information [Lopez] received" appellant was a suspect. Who cares? - a rough definition of relevance. What it did inferentially prove was that other unknown and unspecified witnesses had named appellant as the perpetrator; that Lopez, like some obsessed Javert, knew the criminal and persisted in his quest. But Lopez wasn't on trial and his information was, by any definition, hearsay. (Evid. Code, § 1200.) In sum, the jury was informed that the officer knew it was appellant, others on the street knew it was appellant, and therefore it must have been appellant.

---

[1] "Here, the reasonableness of the investigation was at issue, as shown by the *prosecutor* asking the detective why he continued to investigate appellant when the victims could not identify him in the photographic lineup." (Italics added.)

1

But for the detail and accuracy of appellant's confession I would reverse.

<u>NOT TO BE PUBLISHED</u>

I concur:



PERREN, J.

Leslie A. Swain, Judge

Superior Court County of Los Angeles

_____


Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.