Filed 12/17/24  P. v. Flenoy CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B330162 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA508936) |
| v. | |
| ANTHONY FLENOY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Megan Moine, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Anthony Flenoy was convicted of unlawful possession of ammunition by a felon following a search of defendant's home conducted as a condition of his probation. Defendant argues the trial court prejudicially erred by admitting testimony from police officers stating that the search was lawful. He contends the statements were irrelevant, and even if relevant, should have been excluded because they were more prejudicial than probative.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Information

Defendant was charged by information with possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count one) and unlawful possession of ammunition by a felon (*Id.* § 30305, subd. (a)(1); count two).  During defendant's jury trial, the parties stipulated that defendant had a prior felony conviction for a violation of Vehicle Code section 10851 (unlawful driving or taking of a vehicle).

### B. Prosecution's Evidence

The following facts are taken from the evidence presented at defendant's trial.  Three police officers testified about their search of defendant's home.  On September 10, 2022, defendant was living with his uncle, Sergio Ramos (Ramos), on Fernleaf Street in Los Angeles.  On that date, at about 9:50 p.m., police officers conducted a lawful search of the residence.

Defendant's home was the lower unit of a duplex.  Ramos's mother lived at the home prior to the search but moved out several weeks before.  Ramos had received an eviction notice, so

his mother went to stay with his brother.  Other than defendant, Ramos was the only person at the home that night.

When police officers entered the residence, they saw a kitchen area to the right and a living room area to the left.  An officer testified there was a "makeshift bedroom" in the living room.  A portion of the living room had been partitioned off from the rest of the room with a white sheet.  Ramos stated this was defendant's space.  A dresser and mattress, where defendant slept, were located within this area.  Officers searched the dresser and found a clear first aid kit.  Inside the first aid kit, officers located a "9mm live round."  Officers also found a "live bullet" on the kitchen counter.

The home had two bedrooms.  They shared a closet that was accessible from both.  This was the only closet in the home.  Ramos's bedroom was on the left side of the hallway.  Ramos's mother previously occupied the other bedroom, which appeared vacant at the time of the search.  Ramos said he kept things in the closet, including his clothes and tool bags.  He saw defendant put his clothes in there as well.  Defendant sometimes slept in Ramos's bedroom.

Officers found a rifle on the top shelf in the closet and a black bag on the closet floor with a 12-guage sawed-off shotgun, various ammunition, and extended magazines.  They also found a separate red bag on a shelf in the closet with shotgun ammunition.  The officers booked over 500 rounds of ammunition into evidence from the search.

Ramos testified that there were a lot of people "coming and going" from his home and "hanging out" on the property, including some people he did not know.  He and his mother never kept guns in the house or closet, and he never let visitors bring

3

guns into the home or let anyone store guns there.  He said he was surprised that the firearms and ammunition were found in the closet.

## C.  Evidentiary Arguments About the Lawfulness of the Search

Prior to trial, the People indicated they wanted to introduce the basis of the search, which was done as a condition of defendant's probation, in their case in chief.  The People asserted it would give context to why the officers were searching the home and it was critical for the jury to know the search was being conducted "rightfully."  Defense counsel objected.

The trial court believed the People had a right to explain why the officers were in the home since "it's highly unusual for police officers to be in somebody's house without good reason." But the court said it would accept a stipulation, if the parties agreed, that the officers were lawfully in the house.

The parties agreed only to stipulate to the fact defendant had a prior felony conviction.  As to the search, the People still wished to introduce evidence about why police officers searched the residence.  Defense counsel argued the probation search should not be mentioned at all because it was not relevant, and the prejudice it would cause severely outweighed any probative value.  The court found the evidence to be relevant and explained: "The officers go to that location, they conduct a search of the location.  At the location, they find the items that the defendant is now charged with.  The People must prove knowledge, that's one of the elements they must prove.  Therefore, the search of the home is relevant."

When asked by the trial court how the evidence could be sanitized so that defense counsel would be satisfied, defense counsel stated that she "would not be satisfied with any sanitization." Defense counsel maintained the search was not relevant, arguing, "There's no need to explain it, it is not in dispute. . . . [T]here's no need to contextualize that." The People, however, indicated they were concerned that if they were not allowed to present the basis for the search, the jury was going to "wonder about that" and speculate "as to why [the officers are] doing this and why they're able to do this," which would create a problem for the People "in terms of maintaining the credibility of [the] witnesses."

The trial court ruled that it would "permit the People to have the officers state that a search was conducted on the residence. And that that search is to be considered lawful." The court added, "I think it is appropriate to limit the People into discussing the probation conditions, but the people also have a right to explain contextually why the officers are there." After the ruling, defense counsel responded, "If the court is inclined to allow questioning about the search, I agree with the court. I think it should be limited."

During its case in chief, the prosecution asked each of the three officers at the start of their testimony if they were involved in a lawful search of the property:

> [Prosecutor] And the search that you conducted of that residence, was that a lawful search?
> [Officer Jose Martinez] Yes, it was.
> . . .
> [Prosecutor] Did you assist in a lawful search of that residence?
> [Officer Dennis Eames] Yes, I did.
> . . .

[Prosecutor] Did you conduct a lawful search of that residence [on September 10, 2022, at about 9:50 p.m.]? [Officer Brian Murakami] Yes.

### D. Verdict and Sentencing

The jury found defendant guilty of count 2 (unlawful possession of ammunition by a felon) and not guilty of count 1 (possession of a firearm by a felon). The court denied probation and sentenced defendant to the low term of 16 months on count 2, plus eight months, to be served consecutively, for a probation violation.

Defendant timely appealed.

### DISCUSSION

### A. Defendant's Challenge is Properly Before this Court

Defendant argues the trial court erred in permitting the officers to testify that the search of his residence was lawful. Initially, the People argue defendant waived his claim and invited the alleged error by withdrawing his objection to the evidence. Further, the People assert defendant forfeited his challenge by failing to object when the evidence was introduced at trial. We are not persuaded by the People's contentions.

After the People indicated they wanted to introduce the basis for the search of defendant's home, defense counsel objected, arguing the search should not be mentioned because it was not relevant and the prejudice it would cause outweighed any probative value. When the court indicated the evidence was relevant, defense counsel maintained it should not be mentioned because the search was not in dispute. Counsel stated she "would not be satisfied with any sanitization" of the evidence. After the court ruled it would allow the officers to state a lawful

6

search was conducted on defendant's home, defense counsel expressed that "*if* the court [was] inclined to allow questioning about the search," counsel agreed "it should be limited." (Italics added.)

The record does not demonstrate that defendant withdrew his objection to the evidence concerning the lawfulness of the search. Rather, after the court ruled that it was allowing the testimony, defense counsel merely said that if the questioning was being permitted, it should be limited. Likewise, the People do not demonstrate that defendant invited the alleged error, such that he cannot now challenge it. (See *People v. Waldon* (2023) 14 Cal.5th 288, 304 ["""The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal""""].)

Although defendant did not object when the evidence was introduced during trial, defendant has not forfeited his evidentiary claim. Defense counsel objected before trial to any evidence concerning the lawfulness of the search as being irrelevant and prejudicial. The trial court ruled that limited evidence would be admissible. This discussion alerted the court to the nature of the evidence, the basis of defendant's objection, and afforded the People an opportunity to establish the evidence's admissibility. (*People v. Felix* (1999) 70 Cal.App.4th 426, 431.) Under these circumstances, defense counsel was justified in concluding that mere repetition of the same objection would serve no useful purpose, and thus, the issue was preserved for appeal. (*People v. Morris* (1991) 53 Cal.3d 152, 189, disapproved on

7

another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

**B.      Admission of Statements that the Search was Lawful**

          1.      *Legal Principles and Standard of Review*

          Only relevant evidence is admissible.  (Evid. Code, § 350.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.* at § 210.) The trial court has broad discretion in determining the relevance of evidence but lacks discretion to admit irrelevant evidence. (*People Crittenden* (1994) 9 Cal.4th 83, 132.)

          The trial court also has broad discretion under Evidence Code section 352 to exclude evidence if its probative value substantially outweighs the probability that its admission will (a) necessitate undue consumption of time or (b) create a substantial danger of undue prejudice, confusing the issues, or misleading the jury.  (*People v. Wall* (2017) 3 Cal.5th 1048, 1069; *People v. Jones* (2017) 3 Cal.5th 583, 609.)  "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009.)

          "A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion, and it will not be disturbed

8

unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." (*People v. Wall*, *supra*, 3 Cal.5th at p. 1069.)

### 2. *The Trial Court Did Not Err in Admitting the Officers' Statements*

Defendant argues it was error to admit the testimony concerning the lawfulness of the search because it was irrelevant, and even if "marginally relevant," was more prejudicial than probative. We conclude the trial court did not abuse its discretion in admitting the evidence.

The police officers' statements that their search of defendant's residence was lawful provided relevant background information and context for their presence in the home, their testimony about the search, and the items they found. (See *People v. Edwards* (1991) 54 Cal.3d 787, 818 [evidence that shooting victims were close friends, though not "particularly probative," admissible to provide jury with "background information" to help it understand the circumstances surrounding the shooting], overruled on other grounds as stated in *People v. McDaniel* (2021) 12 Cal.5th 97, 138.) Moreover, forcing the officers not to mention that their presence in defendant's home was lawful could have raised unnecessary questions about their credibility. (*People v. Tully* (2012) 54 Cal.4th 952, 1014 [forcing witness to omit any mention of the cause of her concern and "unusual" decision to go to coworker's home "may have raised unnecessary questions about her credibility"]; see *People v. Harris* (2005) 37 Cal.4th 310, 337 [evidence that helps the jury assess a witness's credibility is

relevant].)  Because the evidence placed the officer's testimony in context and assisted the jury in assessing their credibility, the court did not abuse its discretion in admitting it.  (See *People v. Box* (2000) 23 Cal.4th 1153, 1202 [references to the fact victim was murdered on his third birthday "helped place the testimony of prosecution witnesses in context and assisted the jury in assessing their credibility"], disapproved on another ground in *People v. Martinez* (2010) 47 Cal.4th 911, 948, fn. 10; see also *Tully*, p. 1014.)

Defendant's reliance on *People v. Lucero* (1998) 64 Cal.App.4th 1107 and *People v. Reyes* (1976) 62 Cal.App.3d 53 is misplaced.  In *Lucero*, an officer testified that a witness told him a shoeprint found at a crime scene was left by the robber.  (*Lucero*, at p. 1109.)  The trial court overruled a hearsay objection on the ground the statement was admitted to explain the officer's conduct in arresting the defendant.  (*Ibid.*)  However, the witness's statement to the officer was irrelevant for the nonhearsay purpose offered because the jury was not asked to determine whether the police had probable cause to arrest the defendant.[1]  (*Id.* at p. 1110.)

In *Reyes*, an officer testified about what a witness told him she overheard other people tell the defendant in a bar.  (*Reyes, supra*, 62 Cal.App.3d at p. 67.)  The defendant objected the testimony was hearsay and irrelevant, but the trial court

---

[1]	The *Lucero* court went on to find that the admission of the evidence was harmless because the evidence was not critical in linking the defendant to the robbery.  (*Lucero, supra*, 64 Cal.App.4th at p. 1110.)  Further, the prosecutor did not mention the shoe print in his initial closing statement and only referred to it briefly in rebuttal to the defendant's closing argument.  (*Ibid.*)

overruled the objection on the ground that the statement was admitted for "the nonhearsay purpose of providing probable cause to [the officer] to arrest defendant." (*Ibid.*) However, the legality of the defendant's arrest was not in issue, so the statement was irrelevant for the nonhearsay purpose offered. (*Id.* at p. 68.)

Here, on the other hand, the officers' testimony that the search was lawful did not concern hearsay and was not introduced to show the officers had probable cause to arrest defendant. Rather, the officers' testimony was probative because it gave context to their statements about their search of the home and items they found, and the statements were relevant to assessing the officers' credibility.

Defendant further argues that the testimony should have been excluded under Evidence Code section 352. He asserts that because the jury was told by the three officers that the search was lawful, the jury would have naturally inferred the officers searched the home because defendant was doing something suspicious, which would have caused the jury to judge the case on irrelevant and extraneous factors. We are not persuaded the relatively brief references to the search being lawful had a significant emotional impact on the jury. The officers' testimony was not inflammatory and did not invite the jury to convict defendant for reasons unrelated to actual guilt or innocence. And defendant does not explain how the testimony that the search was lawful would have caused the jury to infer he was doing something suspicious. There was no evidence presented concerning *why* the search of defendant's home was conducted. Accordingly, the trial court was well within its discretion in concluding the probative value of the evidence outweighed its potential for causing undue prejudice.

11

In sum, we find no abuse of discretion in the trial court's ruling.

## C.    Any Error in Admitting the Evidence was Harmless

Even assuming it was error for the trial court to admit the officers' statements that the search was lawful, any error was harmless.  "A judgment may be reversed on appeal for improper admission of evidence only if 'it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.'" (*People v. Vasquez* (2017) 14 Cal.App.5th 1019, 1041, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Defendant asserts that since the jury found defendant not guilty of possessing the firearms found in the closet between the two bedrooms, it stands to reason that the jury likewise did not believe defendant possessed the ammunition in the closet. Defendant contends that the jury must have convicted him based on the bullet found on the kitchen counter or in the first aid kit that was in the dresser in the living room.  Defendant argues that "[s]ince the jury rejected the prosecution's theory that appellant possessed the firearms and the ammunition in the closet, it is reasonably probable at least one juror would have retained a doubt had the error of admitting irrelevant evidence not occurred."

Defendant's argument is tenuous.  His defense was not based on the legality of the search.  At trial, he argued there was no evidence that he knowingly possessed the ammunition or firearms found in the home.  The lawfulness of the search was not critical in linking ammunition to defendant.  The statements by the officers that the search was lawful were brief, and the

12

prosecutor did not mention the lawfulness of the search during closing arguments. (See *Lucero*, *supra*, 64 Cal.App.4th at p. 1110.)

Defendant offers no rational basis to conclude that the statements that the search was lawful could have altered the jury's verdict. Defendant does not show a reasonable juror would presume that because the search of his home was lawful, he was guilty of unlawfully possessing ammunition but not guilty of possessing the firearms. Therefore, it is not reasonably probable that exclusion of the statements would have resulted in a more favorable outcome for defendant.

## DISPOSITION

The judgment is affirmed.


MORI, J.

We concur:


COLLINS, Acting P. J.


ZUKIN, J.