[Crim. No. 5103. Second Dist., Div. Two. Feb. 18, 1954.]

THE PEOPLE, Respondent, v. SAMUEL ORLANDO BROWN, Appellant.

Max Solomon for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

MOORE, P. J.—Convicted of bookmaking (Pen. Code, § 337a, subd. 1), defendant appeals from the judgment and the order denying his motion for a new trial. He demands a reversal on the ground of the insufficiency of the evidence. He maintains that "no testimony was introduced to establish any of the conversation amounted to a wager on a horse race."

Prior to his arrest on February 20, 1953, appellant had been under surveillance for about 45 minutes in his own kitchen on Gladys Avenue in Los Angeles by Officer Fusilier of the police force. The officer is an expert in the knowledge of the equipment, methods and practices of the bookmaker in Los Angeles County. He sat in a room adjoining the kitchen and observed the acts of appellant and his visitors. As Mr. Jones entered he was greeted with appellant's salutation: "My two horses came in . . . Jones come in." Jones replied, "You owe me seventeen fifty—no, it was forty—no, it is thirty." Thereupon, appellant delivered some currency to Jones. The statement that his "two horses came in" indicated a bettor was talking and his horses had won.

At 3:05 p. m. Messrs. A and B entered. Appellant asked: "Which one do you want?" Mr. A replied: "Seven, Bar Key," and passed to appellant some currency. Two minutes later Mr. B said: "I will take that one," and pointed to certain papers on the drainbroad which appellant had taken from the curtained space beneath the sink. They included a newspaper, a National Daily Reporter* and a green sheet.

After a few minutes had passed, Madam X entered and engaged appellant in conversation. She laid some bills on the drainboard and said: "Terry's Man, five on it." At that appellant pulled some white sheets of paper from his stocking, placed them on the Daily Reporter and with a pencil went through the motions of writing. The stack of currency on the drainboard contained about ten bills. Appellant took them and wrapped them around other currency he removed from his pocket to which he returned the augmented roll.

About 3:30 p. m. the officer saw Mr. C hastily enter the kitchen and yell out: "Sam it's a raid." At that signal, appellant inserted the small pieces of paper into his right stocking, picked up the other papers and restored them to their earlier shelter behind the curtained area beneath the sink as other officers entered. Appellant was then placed under arrest and searched. From his right stocking the officers re-

---

*The Reporter publishes the events at the major tracks in America showing the horses, their weights, probable odds and jockey.

moved "small sheets of paper" which contained "various notations, numbers and written letters." It was established that the symbols written by appellant on the small sheets of paper indicate the track, the horse, the amount wagered. They are followed by the initials or name or a code symbol for the bettor. Such a paper is part of the bookmaker's paraphernalia and one of his means and methods of recording bets. It is common practice for bets to be recorded in cipher and for the names of bettors to be recorded on a betting marker by using a code sign or the initials of the bettor. The copy of the National Daily Reporter was the edition of the very day of the arrest. It contains the name of the horse, "Terry's Man" running at Santa Anita Park in the eighth race; also the name of "Bar Key" in the same race.

Appellant sat silent at the trial and offered no evidence in explanation of the incriminating proof.

From the facts that certain individuals entered the house of appellant, called the names of horses that were running that day in specified races and delivered currency to appellant; that he accepted such moneys, made notations of the bettor, the amount of his wager, the number of his horse, the name of the track, all in cipher or secret symbols—constitute sufficient proof of appellant's guilt in the absence of an explanation. From such it was fairly inferable that the words exchanged between appellant and his visitors were with reference to wagers on horse races run on that day as advertised in the National Daily Reporter carefully kept by appellant beneath his kitchen sink. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) It is for the trial court to determine the ultimate fact and before its finding can be set aside "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*Ibid.*)

No other words were necessary than those uttered by Mr. Jones, Messrs. A and B and Madam X to place a bet on the horse designated by each of them so long as their words were accompanied by the delivery of money to the person accused of bookmaking. (*People* v. *Rubin,* 115 Cal.App.2d 186, 187 [251 P.2d 374].) Proof that appellant made the notations on the small sheet of white paper is the inference from its presence in appellant's stocking at the time of his arrest, his act in going through writing motions at the time he received the moneys and that the memoranda made contain records

of the bets called for by each bettor. But proof that appellant made the notations was not indispensable to a conviction. (*People* v. *Panzick*, 118 Cal.App.2d 621, 623 [257 P.2d 537].)

The facts at issue are closely akin to those in *People* v. *Burch*, 118 Cal.App.2d 122 [257 P.2d 44], wherein this court concluded that the accused was engaged in bookmaking. See, also, *People* v. *Panzick, supra.* ■ The trial court was entitled to consider appellant's silence under accusation as an indication of the truth of the evidence received against him and in his presence. (*People* v. *Smith,* 113 Cal.App.2d 416, 419 [248 P.2d 444].)

Appellant complains that Officer Fusilier could not find on exhibit A any symbol that he could interpret to mean ''Terry's Man.'' ■ A complete, intelligible record of the bookmaker's transactions is not necessary to the proof of his guilt. Subdivision 1 provides that one is guilty of bookmaking ''with or without writing,'' if he takes a wager on a contest of speed of man or beast; etc. Complaint is made that no testimony was introduced to prove a conversation amounted to a wager. That is an ultimate fact which the court found from the conversation as reported by the officer. The notations made by a bookmaker might fail to include symbols for one or more facts. There is no required amount of writing to be done by a solicitor.

Judgment and order denying the motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.