[Crim. No. 8018. Second Dist., Div. One. Aug. 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. SOLLY TERENO, Defendant and Appellant.

Matthews & Stanley and Al Matthews for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was found guilty of violating section 337a, subdivision 3, Penal Code. The cause was submitted to the trial court on the transcript of the preliminary hearing. The defendant neither testified nor offered a defense.

The transcript discloses the following evidence. On several occasions between March 1 and March 23, 1961, Officer McDowell, investigating a bookmaking complaint, went to the Pig'n Whistle café between 10 and 11:30 a. m., where he observed defendant enter, sit at the counter or a booth and order food, and hold short conversations with various persons. (On the issue of probable cause, McDowell testified that fellow officers, previously investigating the same complaint, advised him that in February they observed defendant enter the café and contact another man seated at the counter, and after a

conversation, the latter consult a National Daily Reporter and hand currency to defendant; and on another occasion they saw defendant sit in a booth with three men, the latter look at a National Daily Reporter and after a short conversation with defendant each hand him some currency.) On March 23, 1961, McDowell, who had come to the location at approximately 10:30 a. m., saw defendant enter the café, hold a conversation with one Winkle and sit with him in a booth. Winkle consulted a National Daily Reporter (Ex. 1) spread out on the table, and said to defendant, ''Give me one to win on Steel Prophit [*sic*] in the first at Gulfstream Park.'' He removed a $1.00 bill from his wallet and handed it across the table to defendant who took the money and placed it in his pocket with a roll of currency (Ex. 2) he had previously removed therefrom. Defendant then walked to a telephone booth; McDowell followed and observed him insert a coin and dial a number. In about 45 seconds he left the booth, and returned to Winkle who said, ''The one I bet on yesterday really paid off,'' whereupon defendant handed some currency across the table to Winkle. When they left the café McDowell arrested them. A National Daily Reporter (Ex. 1) was taken from Winkle's right hand; on page three was a check mark next to the words ''Steel Prophet.'' Steel Prophet was a horse listed to run in the first race at Gulfstream Park on March 23, 1961. The roll of currency (Ex. 2), consisting of five $20 bills and eleven $1.00 bills, was taken from defendant. These items (Exs. 1 and 2) are commonly used in bookmaking in Los Angeles. After his arrest defendant told officers he had not taken a bet from Winkle; then said that ''he had not called it out because he couldn't get it down; No one answered the phone.'' McDowell had no warrant of arrest or search warrant in his possession.

Appellant first argues the sufficiency of the evidence. Section 337a, Penal Code, provides that ''Every person, . . . 3. Who, . . . receives, holds, or forwards, . . . in any manner whatsoever, any money, . . . to be . . . bet or wagered, or offered for the purpose of being . . . bet or wagered, upon the result, . . .'' of any horse race is guilty of bookmaking. Under this section all that is necessary to support a conviction is proof that defendant received, held, or forwarded money on the result of a horse race or purported horse race; and it is satisfied by evidence that the bettor named the horse and the amount being bet with delivery of the money to the accused. (*People* v. *Rubin,* 115 Cal.App.2d 186 [251 P.2d

374].) See also *People* v. *Brown,* 123 Cal.App.2d 361 [266 P.2d 805]. In a case similar on its facts, the court said: "Nothing more was required to place a bet than for a bettor to say 'Five across' or 'Four and four,' naming a horse entered in a race, accompanied by the delivery to the addressee of the money." (*People* v. *Rubin,* 115 Cal.App.2d 186, 187 [251 P.2d 374].) ▮ McDowell's testimony was more than sufficient to prove the violation. It establishes that Winkle, after consulting a National Daily Reporter, said to defendant, "Give me one to win on Steel Prophet in the first at Gulfstream Park," and handed him $1.00 and that defendant took the money and tried to place the bet, but was too late. While defendant told officers "he had not taken a bet" from Winkle, he immediately contradicted this by admitting "he had not called *it* out because he couldn't get *it* down; No one answered the phone." The trier of fact could and did consider the latter statement, and, with the other evidence in the case, predicated thereon his determination that defendant did in fact take the bet; the defendant's statements did not all consist of uncontradicted evidence in his favor. (*People* v. *Johnston,* 48 Cal.2d 78 [307 P.2d 921].)

Appellant points out that no writing of defendant was found indicating any bookmaking activity, and there was no proof that defendant made the check mark on the National Daily Reporter. ▮ However, subdivision 3, section 337a, providing that every person who receives or holds "*in any manner whatsoever*" any money for the purpose of being wagered on a horse race is guilty of bookmaking, does not require any writing or other paraphernalia be used to transact a bet.

Cited for our attention are *People* v. *Rabalete,* 28 Cal.App. 2d 480 [82 P.2d 707]; *People* v. *Simon,* 66 Cal.App.2d 860 [153 P.2d 420] and *People* v. *King,* 111 Cal.App.2d 201 [244 P.2d 20], but these cases are not similar to the one at bar; the latter is more like *People* v. *Rubin,* 115 Cal.App.2d 186, *supra,* in which the court likewise rejected the *Rabalete* and *King* cases.

Appellant claims the testimony of the officer was inherently improbable, in "(1) that the appellant would have accepted a bet on a race which was supposed to have been run at 10:50 a. m. when it was already several minutes after 11:00 a. m.; and (2) that the third party would have paid $1 to appellant as a bet when he allegedly had an unknown sum coming from appellant" (A.O.B., p. 11), and that both are against custom

and usage in bookmaking circles and against common sense.
■ "Inherently improbable testimony involves a claim that something has been done that it would not seem possible could be done under the circumstances described, or involves conduct that no one but an insane person would be likely to do. [Citations.]" (*People* v. *Brown,* 100 Cal.App.2d 207, 209 [223 P.2d 60].) Stated otherwise, "[T]estimony is not inherently improbable unless it appears that what was related or described could not have occurred. (*Trancoso* v. *Trancoso,* 96 Cal.App.2d 797, 798 [216 P.2d 172.)" (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836].)

As to the time the officer first observed defendant, the probable post time for the race in question was 10:50 a. m. On direct examination the officer said he arrived at approximately 10:30 a. m. and first saw defendant "approximately at 11:00 a. m." walk into the café; on cross-examination, when questioned specifically about the exact time he first saw defendant, he stated: "I believe I am in error in that counsel"; he established that "maybe three or four minutes" elapsed between the time defendant entered the café and he observed the transaction and then again said, "I stated I was in error as to the time. The time of the arrest or the time on the arrest report will bear out the fact that I was in error in my testimony." The officer conceded his error and corrected it.
■ "The mere fact that there are contradictions and inconsistencies in the testimony of a witness, or that the truth of his evidence is open to suspicion, does not render it inherently improbable within the meaning of the rule." (*People* v. *Fremont,* 47 Cal.App.2d 341, 349 [117 P.2d 891].) The trial judge, as he had a right to do, obviously believed the officer's statement that in his previous testimony he had been in error as to the time, and inferred from that and his other testimony that defendant entered the café and the transaction took place before 10:50 a. m. ■ "On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat the judgment." (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836] ; *People* v. *Hills,* 30 Cal.2d 694 [185 P.2d 11].) ■ Defendant did not see fit to take the witness stand and establish the exact time he entered the café; the trial court was entitled to consider his silence under accusation as an indication of the truth of the evidence received against him. (*People* v. *Brown,* 123 Cal.App.2d 361 [266 P.2d 805] ; *People* v. *Smith,* 113 Cal.App. 2d 416 [248 P.2d 444].)

 Nor is the officer's testimony that Winkle gave defendant $1.00 as a bet on a horse, inherently improbable or unbelievable because at the time Winkle knew he had a sum of money coming from defendant. Assuming that such conduct is against usage and custom in bookmaking circles and good common sense, or unusual or out of the ordinary or even open to suspicion, it does not render the officer's testimony inherently improbable. (*People* v. *Fremont*, 47 Cal.App.2d 341 [117 P.2d 891].) "A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se*, must involve a claim that something has been done that it would not seem possible could be done under the circumstances described." (*People* v. *Fremont*, 47 Cal.App.2d 341, 349 [117 P.2d 891].)

 Defendant claims the officer had no probable cause to arrest Winkle, and unlawfully seized exhibit 1 (National Daily Reporter) from him. The officer had the right to arrest Winkle without a warrant if he had "reasonable cause to believe" he had "committed a felony, whether or not a felony has [had] in fact been committed." (Pen. Code, § 836, subd. 3.) Having heard Winkle, after consulting exhibit 1, say to defendant, "Give me one to win on Steel Prophet in the first at Gulfstream Park"; having observed him hand $1.00 to defendant and defendant take the money, go to the telephone booth and do what he did; and having heard Winkle state, "The one I bet on yesterday really paid off" and observe defendant hand some currency to him, the officer certainly had reasonable cause to believe that Winkle was making a bet in violation of section 337a, Penal Code, a felony The arrest of Winkle having been lawful, the seizure of the National Daily Reporter (relating to the crime for which he was arrested) was reasonable and in good faith, and was lawful as incident to a lawful arrest. It is clear that exhibit 1 was used by Winkle in the course of his transaction with defendant; moreover, no search was required to observe it in plain sight in his hand.

 As his final contention appellant argues that while these items are commonly used by, and are part of the paraphernalia of, bookmakers in Los Angeles, the National Daily Reporter (Ex. 1) and the roll of currency (Ex. 2) were improperly received in evidence because they were neither relevant nor material; that the National Daily Reporter was in no way connected with him and the money was not sufficiently identified. While taken from the possession of a third person,

the National Daily Reporter (Ex. 1) was consulted by him just before his transaction with defendant; it contained a check mark next to the words "Steel Prophet"; and showed Steel Prophet ran in the first at Gulfstream Park on that day. It was received by the court as part of the evidence of the betting transaction between Winkle and defendant; and it tended logically, naturally and by reasonable inference to establish this fact material to the conviction of defendant under section 337a, subdivision 3. (*People* v. *Jones,* 42 Cal.2d 219 [266 P.2d 38].) ▮▮▮ That the money (Ex. 2) found in defendant's possession was not shown to contain the same $1.00 bill given by Winkle to him, does not under the circumstances destroy its relevancy; proof of defendant's possession of the money "at the time of his arrest is a potent link in the chain of circumstances to prove his vocation." (*People* v. *Cohen,* 107 Cal.App.2d 334, 341 [237 P.2d 301].)

Assuming that either or both exhibits were improperly admitted, there appears no prejudice to defendant, for the evidence shows that the bettor named the horse and the amount of money he was betting, and his delivery of the money for that purpose to the accused. (*People* v. *Rubin,* 115 Cal.App. 2d 186 [251 P.2d 374] ; *People* v. *Brown,* 123 Cal.App.2d 361 [266 P.2d 805].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.