Filed 3/14/22

<u>CERTIFIED FOR PARTIAL PUBLICATION</u><u>*</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANTONIO LOPEZ,<br><br>    Defendant and Appellant. | B317228<br><br>(Kern County<br>Super. Ct. No. BF131896A) |

    APPEAL from a judgment of the Superior Court of Kern County, Stephen Schuett, Judge.  Affirmed with directions.
    Hilda Scheib, under appointment by the Court of Appeal, for Defendant and Appellant.

---

*    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of (1) parts B and C of the Factual and Procedural Background (however, the headings for parts B and C of the Factual and Procedural Background are to be published); (2) parts A and B of the Discussion (however, the headings for parts A and B of the Discussion are to be published); and (3) all numbered subheadings.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Louis M. Vasquez, Supervising Deputy Attorney General, and Lewis A. Martinez, Jennifer Oleska, and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Jose Antonio Lopez fled to Mexico after his two step-granddaughters accused him of sexually abusing them. Eight years later Lopez was arrested in California. A jury convicted Lopez on two counts of continuous sexual abuse of a child—one for each step-granddaughter—and the trial court sentenced him to two consecutive terms of 15 years to life.

Lopez contends that the delay in prosecution violated his rights to a speedy trial, that substantial evidence did not support either conviction, and that the court did not understand it had discretion to impose concurrent sentences on the two convictions. In the unpublished portion of the opinion, we conclude that the trial court did not violate Lopez's speedy trial rights and that substantial evidence supported his convictions. In the published portion, we conclude the trial court had discretion under Penal Code section 667.61, subdivisions (c) and (i),[1] to impose concurrent sentences. Therefore, we affirm the convictions on both counts of continuous sexual abuse of a child, vacate the sentences on those convictions, and direct the trial court to

_____

[1] Statutory references are to the Penal Code.

2

exercise its discretion whether to impose consecutive or concurrent sentences on those convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Lopez Is Arrested Eight Years After His Step-granddaughters Accuse Him of Sexual Abuse*

Karen R. is the mother of Daniela C. and Rebecca C. Lopez was Karen's stepfather and, thus, Daniela and Rebecca's step-grandfather. In February 2010 Karen reported to the Bakersfield Police Department that Lopez had sexually abused Daniela, who was eight years old at the time, and Rebecca, who was six. Officer Felipe Juarez interviewed Daniela and Rebecca, each of whom told the officer that Lopez had touched her vaginal area and buttocks.

On February 17, 2010 Karen made a "pretext call"—a call monitored by law enforcement and intended to elicit incriminating information—to Lopez, accusing him of abusing Daniela and Rebecca. Detectives Lance O'Nesky and Hector Caldas interviewed Lopez later that day and informed him of the nature of their investigation. Sometime between then and March 8, 2010, Lopez went to Mexico.

In April 2010 the People filed a complaint charging Lopez with two counts of continuous sexual abuse of a child under the age of 14, in violation of Penal Code section 288.5, subdivision (a): count 1 for sexual abuse of Daniela and count 2 for sexual abuse of Rebecca. The superior court issued a warrant for Lopez's arrest.

Lopez was not arrested until August 6, 2018. On August 28, 2018 the People filed an information charging Lopez

3

with the same two counts of continuous sexual abuse of a child. For each count, the People alleged Lopez committed an offense specified in section 667.61, subdivision (c)—which includes continuous sexual abuse of a child (§ 667.61, subd. (c)(9))— against more than one victim (see *id*., subd. (e)(4)).[2] Whether a true finding on that allegation required the court to impose consecutive terms is one of the issues in this appeal.

B.    *Lopez Files a Motion To Dismiss, Which the Trial Court Denies*

Lopez filed a motion to dismiss the charges, contending the People violated his speedy trial and due process rights by waiting eight years to arrest and arraign him. Lopez filed a declaration stating he did not visit Daniela and Rebecca's home in January or February 2010, when some of the abuse allegedly occurred. He argued the delay in bringing the case to trial prejudiced him because, after a diligent search, he was unable to locate two former co-workers whose testimony would have corroborated his testimony or obtain records from a former employer that would have supported his defense.

Lopez also stated in his declaration that in February 2010 he gave law enforcement his home address in Bakersfield and his phone number. He said that he resided at the Bakersfield address "for at least a year or two after February of 2010, and had the same phone number for even longer," but that law enforcement never contacted him to follow up on the

---

[2]    The People also charged Lopez with two counts of willfully and lewdly committing a lewd or lascivious act on a child under the age of 14, in violation of section 288, subdivision (a). The jury found Lopez not guilty on those counts.

investigation.  Lopez stated:  "At some point I went to Mexico, however, this was years later and had nothing to do with avoiding criminal prosecution."

At the hearing on the motion to dismiss, Lopez admitted on cross-examination that in fact he went to Mexico in March 2010, within a few weeks after the detectives informed him of the investigation.  According to Lopez, he returned to the United States in June 2014.  Detective O'Nesky testified Karen told him in March 2010 that Lopez went to Mexico and that he intended to stay there for at least a year.

The court denied the motion to dismiss.  The court found Lopez "fled to Mexico once he was accused, which doesn't bode well for him."  The court also stated that, although law enforcement could have done more to locate Lopez, there was no prejudice from the delay because "we don't know what his co-workers would say."

C.   *The Family Testifies at Trial*

1.   *Karen Learns Lopez Abused Her Daughters*

Karen testified that in 2010 she lived in a house with Daniela, Rebecca, and her other children.  Between 2006 and February 2010 Lopez babysat Karen's children two to three times a month, occasionally spending the night.  In February 2010 Daniela and Rebecca told Karen that Lopez had abused them.

2.   *The Jury Hears Evidence of Daniela's Abuse*

Daniela, who was 17 years old when she testified at trial, stated Lopez abused her when she was seven and eight years old.  Although she could not recall all the details of the abuse, she

testified that on approximately five different occasions Lopez rubbed her vagina over her clothes with his hands and that on two to four occasions he touched her buttocks. Daniela also said Lopez touched her chest, but she could not remember how many times. In addition, Daniela testified that on one occasion she saw Lopez without "his clothes on." When asked how long Lopez abused her, Daniela said, "About five months." She said she never saw Lopez again after she reported the abuse. Daniela testified that she was nervous and uncomfortable talking about the case and that she did not want to testify because it "happened a long time ago and [she] put it past [her]."

Officer Juarez testified that when he interviewed Daniela in 2010 she stated Lopez touched her "pee pee area" and "butt area," both over her clothes and directly on her skin. The People also introduced the transcript of an interview with Daniela that Detective Caldas conducted in September 2018, shortly after Lopez was arrested. In that interview Daniela's description of the abuse was similar to her testimony at trial, but in the interview Daniela stated Lopez had rubbed her vagina under her clothing. In the interview she also described an incident she did not testify about at trial, where Lopez took off Daniela's underwear and put Daniela's hand on his penis. At trial Daniela testified she told the truth during the interviews.

> 3. *The Jury Hears Evidence of Rebecca's Abuse*

Rebecca, who was 15 years old when she testified at trial, remembered three specific incidents, which she described as the "traumatic" and "main" instances of abuse. In the first incident

6

Lopez got a blanket, put it over him and Rebecca, and rubbed Rebecca's chest area over her clothes.

In the second incident Lopez took Rebecca to her bedroom, told Rebecca's brother (who had followed them) to leave, and locked the door. Lopez removed his pants, told Rebecca to remove her clothes, and tried to remove Rebecca's skirt. Rebecca resisted and said, "No, I want to keep it on." Daniela knocked on the door, asked what they were doing, and said she was going to get the keys to the bedroom. Lopez "freaked out" and put his pants back on before anything else happened.

In the third incident, Lopez and Rebecca were lying on the floor with a blanket over them, watching television. Lopez started rubbing Rebecca's chest and vagina over her clothes. Lopez put Rebecca's hand on his penis, also over his clothes. The incident lasted five to 10 minutes. Rebecca testified that, after she reported the abuse, she saw Lopez once in 2016 outside her house, but otherwise did not see him until August 2018.

Rebecca did not remember the details of other instances of abuse, but she testified that Lopez touched her vagina "a lot" of times and that she touched his penis more than once. Officer Juarez testified that, when he interviewed Rebecca in 2010, Rebecca stated Lopez touched her vaginal area over her clothes approximately five times. The People also introduced the transcript of an interview of Rebecca that Detective O'Nesky conducted in March 2010. During that interview Rebecca stated Lopez grabbed her hand and placed it on his penis, over his clothes, about 20 different times. Although Rebecca did not remember her 2010 interviews with Officer Juarez and Detective O'Nesky, she remembered that in 2010 she spoke to law enforcement about what happened and that she told the truth.

Rebecca initially testified the abuse went on for a "couple" of months, but then described a "couple" of months as "three or four." In addition, when the prosecutor asked her to estimate how much time passed between the first and last incident, she stated that it was "just a couple" of months; then that it was "more than two, so three" months; and finally that it was "a good two, three months . . . from the first time to the last."

4.    *Lopez Testifies in His Defense*

Lopez denied he ever touched Daniela or Rebecca sexually or inappropriately or forced them to touch him sexually or inappropriately. He also denied he ever took Daniela or Rebecca into a bedroom alone.

Lopez testified that in 2010 he was dating a woman named Silvia and in that year moved to Mexico to marry her.[3] Silvia did not accompany him to Mexico, but later met him there. Lopez admitted that he left his children, grandchildren, and job behind in the United States when he went to Mexico and that he did not see his children again until he returned to the United States in June 2014. He stated his decision to go to Mexico had nothing to do with the accusations against him.

D.    *The Jury Convicts Lopez, and the Trial Court Sentences Him*

The jury convicted Lopez on both counts of continuous sexual abuse of a child and, for each count, found true the allegation Lopez committed an offense specified in section 667.61,

---

[3]    Lopez explained that he was undocumented in 2010 and that he was told "it would be better" to get married in Mexico than in the United States to avoid potential punishment.

subdivision (c), against more than one victim, within the meaning of section 667.61, subdivision (e)(4).  The trial court sentenced Lopez to consecutive prison terms of 15 years to life.  Lopez timely appealed.

## DISCUSSION

A. *The Trial Court Did Not Violate Lopez's Speedy Trial Rights*

1. *Applicable Law and Standard of Review*

Article I, section 15 of the California Constitution guarantees a criminal defendant the right to a speedy trial. (See *People v. Cowan* (2010) 50 Cal.4th 401, 430.)  The "speedy trial guarantee under the state Constitution is triggered by the filing of a felony complaint. . . .  [S]uch a violation may be premised 'on delay occurring after the filing of the complaint and before the defendant was held to answer the charge in superior court.'" (*People v. DePriest* (2007) 42 Cal.4th 1, 27 (*DePriest*), italics omitted; see *People v. Horning* (2004) 34 Cal.4th 871, 895 (*Horning*)).[4]

Where, as here, "'a defendant seeks dismissal based on delay after the filing of the complaint and before indictment or

_____

[4]     Lopez does not argue the trial court violated his right to a speedy trial under the Sixth Amendment to the United States Constitution.  (See *DePriest*, *supra*, 42 Cal.4th at p. 26 ["[i]t is settled that . . . [t]he filing of a felony complaint does not trigger federal speedy trial protection" under the Sixth Amendment because "the Sixth Amendment requires 'formal accusation in the court with jurisdiction over the prosecution of the charge' . . . or 'arrest with continuing restraint' on such charge"].)

9

holding to answer on felony charges, a court must weigh "the prejudicial effect of the delay on defendant against any justification for the delay." [Citations.] No presumption of prejudice arises from delay after the filing of the complaint and before arrest or formal accusation by indictment or information [citation]; rather, the defendant seeking dismissal must affirmatively demonstrate prejudice.'" (*DePriest*, *supra*, 42 Cal.4th at p. 27; see *People v. Lowe* (2007) 40 Cal.4th 937, 942; *Horning*, *supra*, 34 Cal.4th at p. 895.)

"Whether preaccusation delay is unreasonable and prejudicial to a defendant is a question of fact." (*People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1330.) "'We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them.'" (*People v. Jones* (2013) 57 Cal.4th 899, 922; see *People v. Garcia* (2014) 223 Cal.App.4th 1173, 1177; *Mirenda*, at p. 1330.)

> 2.      *Substantial Evidence Supported the Trial Court's Finding That the Delay Did Not Prejudice Lopez*

Lopez contends that, contrary to the trial court's finding he failed to show prejudice, he "made a credible showing that he would have been able to establish an alibi" through the testimony of two former co-workers he could no longer locate. Substantial evidence, however, supported the trial court's finding.

To show prejudice, "a defendant claiming a speedy trial violation under the California Constitution must show that the delay has impaired the ability to defend against the charged crime because, for instance, a witness has become unavailable,

10

evidence has disappeared, or the memory of a potential witness has faded." (*People v. Lowe*, *supra*, 40 Cal.4th at p. 945, fn. omitted.) But "speculation about prejudice . . . because witnesses and evidence are now unavailable is insufficient to discharge defendant's burden. [Citation.] A particular factual context must be established in which a specific claim of prejudice can be evaluated." (*Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 946.)

The trial court did not err in ruling Lopez failed to meet his burden to establish a specific factual context showing prejudice. Lopez argued primarily that, but for the People's delay, he could have presented evidence he did not abuse Daniela and Rebecca on a specific date—February 8, 2010. Lopez argued in his motion that the People alleged he committed abuse "on a specific date (2/8/2010)" and that he did not visit the home of Daniela and Rebecca at that time. And counsel for Lopez stated in a supporting declaration he was unable to obtain employment records or cell phone records from "on or around" February 8, 2010 or speak to family members who could "say with any certainty where [Lopez] was, or went, on that specific date."

But the People did not have to prove—indeed, did not attempt to prove—Lopez abused Daniela or Rebecca on February 8, 2010 or any other specific date. The People alleged that Lopez abused Daniela at least three times between October 23, 2006 and February 8, 2010 and that he abused Rebecca at least three times between October 28, 2008 and February 8, 2010. And the People presented evidence he abused them multiple times over a five-month period, not necessarily on February 8, 2010. Thus, evidence of where Lopez was and what he was doing on February 8, 2010 was not particularly probative

11

of whether he sexually abused his step-granddaughters three or more times between October 23 or 28, 2008 and February 8, 2010. (See *People v. Jones*, *supra*, 57 Cal.4th at p. 923 [trial court did not err in finding the defendant's claimed loss of "two 'important' witnesses" because of a delay in filing charges did not prejudice the defendant where the People had a strong case and it was unclear the witnesses would have been available to testify]; *Horning*, *supra*, 34 Cal.4th at p. 894 [defendant failed to show any particularized prejudice from his inability "to locate certain alleged witnesses" where "he failed to show that any of these persons were relevant to the case or could help him in any way"].)

Lopez contends that the two witnesses he identified could have corroborated his testimony he was working seven days a week in January and February 2010 and that therefore he did not see Daniela or Rebecca during those two months. In his declaration Lopez identified two former co-workers whom he "usually socialized" with "after work" and who, according to Lopez, "would most likely have been able to vouch for [his] whereabouts on any given day and time . . . ." But again, whether Lopez worked seven days a week during two of the months the People alleged he abused Daniela and Rebecca was not particularly helpful to his defense. Lopez did not explain why it was impossible or even unlikely for him to have babysat Daniela or Rebecca on a day he worked. And it was highly improbable that two witnesses could have accounted for Lopez's whereabouts for nearly all of January and February 2010. (See *People v. Lewis* (2015) 234 Cal.App.4th 203, 213 [the "Supreme Court has repeatedly found speculative arguments inadequate to establish the actual prejudice required for delayed prosecution to constitute a due process violation"]; *Shleffar v.*

12

*Superior Court*, *supra*, 178 Cal.App.3d at p. 947 [defendant failed to show prejudice where she "failed to establish by any competent evidence, as opposed to speculation, surmise or conjecture, that her ability to prepare a defense has been prejudiced"].)

Lopez's argument on prejudice also suffers from a more fundamental flaw. The only evidence Lopez submitted on the issue of prejudice was his testimony that he worked seven days a week and that two co-workers would have provided corroborating testimony. The trial court, however, did not have to find Lopez's statements were credible. (See *People v. Hannon* (1977) 19 Cal.3d 588, 609 [in evaluating whether the prosecution violated the defendant's speedy trial rights, "the trial court was not obliged to accept defendant's uncorroborated assertion that he resided with his parents"].) And there were serious questions about Lopez's credibility. Lopez stated in his declaration he did not move to Mexico until "years" after the police informed him that Daniela and Rebecca had accused him of abuse—presumably to show the prosecution unreasonably delayed before arresting him. At the hearing on his motion, however, Lopez admitted it was not really "years"—it was closer to days (or, at most, a couple of weeks).

3. *The Trial Court Did Not Err in Ruling the Justification for Delay Outweighed Any Prejudice to Lopez*

Even if Lopez had shown he suffered some nonspeculative prejudice, the trial court did not err in ruling the reason for the delay—Lopez's decision to flee—outweighed any such prejudice. Pretrial delay may be justified where the defendant's actions contribute to the delay, particularly where the defendant flees

13

the state to avoid prosecution. (See *DePriest*, *supra*, 42 Cal.4th at p. 28 [delay between the filing of the complaint and the trial was justified where the defendant fled to another state]; *Horning*, *supra*, 34 Cal.4th at p. 895 [delay in bringing the defendant to trial was "especially" justified while the defendant was in hiding in another state].)[5]

The trial court found Lopez fled to Mexico after Detectives Caldas and O'Nesky told him that they were investigating claims against him of sexual abuse. Substantial evidence supported the trial court's finding. As discussed, Lopez initially stated he did not move to Mexico for years, but he later admitted he moved to Mexico within a couple of weeks after the detectives interviewed

---

[5]     Some courts have held a "'defendant who flees the jurisdiction of a court for the purpose of avoiding prosecution waives the right to a speedy trial.'" (*People v. Garcia, supra*, 223 Cal.App.4th at p. 1178; see *People v. Perez* (1991) 229 Cal.App.3d 302, 308.) Other courts, however, "have found that a defendant's flight is simply one of several pertinent factors which must be considered as part of the court's speedy trial inquiry," at least under the United States Constitution. (*People v. Hsu* (2008) 168 Cal.App.4th 397, 404-405, disapproved on another ground in *K.R. v. Superior Court* (2017) 3 Cal.5th 295, 313, fn. 10; see *Doggett v. United States* (1992) 505 U.S. 647, 656 [112 S.Ct. 2686, 120 L.Ed.2d 520] [the "government may need time" to locate a defendant who "goes into hiding," which would be entitled to "great weight" in a court's determination of whether the government violated a defendant's speedy trial rights].) The People do not cite *Garcia* or *Perez* or argue Lopez waived his speedy trial rights. At a minimum, the trial court properly considered Lopez's flight as a factor in determining whether the reasons for the delay outweighed the prejudice to Lopez.

14

him.  The chronology indicates Lopez fled after, and because of, the allegations against him.

Lopez argues the trial court's finding on flight was erroneous because the People did not file the complaint until April 2010, after he was already in Mexico.  But the record shows Lopez knew he was a suspect and charges were likely coming. The People submitted the transcript of the detectives' February 2010 interview with Lopez.  During the interview, Detective Caldas attempted to elicit a confession from Lopez, while Lopez maintained he had not abused Daniela or Rebecca.  At the conclusion of the interview, Detective Caldas told Lopez, "You're a suspect of molesting children" and "I'll call you later and I'll tell you how this . . . case is going."  Even if Lopez's speedy trial right under the California Constitution had not yet attached when he fled in March 2010, there was substantial evidence that Lopez fled California to avoid prosecution and that his flight contributed to the prearrest delay.  (See *DePriest*, *supra*, 42 Cal.4th at p. 28 [defendant's flight to another state justified the prosecution's pretrial delay, even though the prosecution did not file the complaint until after the defendant was in the other state].)

Lopez also argues he had to show only minimal prejudice from the delay because the prosecution did "absolutely nothing toward locating [him] or informing him of the charges against him."  The factual premise of his argument is not correct.  An officer with the Bakersfield Police Department testified the court issued a warrant for Lopez's arrest on April 29, 2010.  The officer entered the warrant on the California Law Enforcement Telecommunications System network (CLETS), which would have notified any law enforcement officer in California who ran a

15

record check on Lopez of the warrant. True, as the trial court found, the People could have taken more steps to bring Lopez to trial sooner, such as attempting to locate Lopez in Mexico after he fled. But the People did not have to show such heightened diligence. As discussed, the issue is whether the prejudice to Lopez outweighed the justification for the delay. Because Lopez showed, at most, minimal prejudice, and because Lopez was largely responsible for the delay, the trial court did not err in denying the motion. (Cf. *Horning*, *supra*, 34 Cal.4th at p. 894 [no violation of the defendant's speedy trial rights where the "[d]efendant's actions contributing to the delay," including "going into hiding," were "far more blameworthy than any government-caused delay"].)[6]

_____

[6] Lopez contends the delay also violated his due process rights under the state and federal constitutions. The "'right of due process protects a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense' . . . '[even] before the accused is arrested or the complaint is filed . . . .'" (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250.) But the "test of a state constitutional speedy trial violation and a state constitutional due process violation converge, so "'regardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay."'" (*People v. Contreras* (2009) 177 Cal.App.4th 1296, 1305; see *People v. Martinez* (2000) 22 Cal.4th 750, 767; see also *Nelson*, at p. 1251 [while "the exact standard under [the United States] Constitution is not entirely settled," the "law under the California Constitution is at least as favorable for defendant . . . as the law under the United States Constitution"].) The People did not violate Lopez's federal or state due process rights for the same reasons they did not violate his speedy trial rights.

16

B.    *Substantial Evidence Supported Lopez's Convictions*
      *for Continuous Sexual Abuse of Daniela and Rebecca*

1.    *Applicable Law and Standard of Review*

Section 288.5, subdivision (a), provides:  "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . or three or more acts of lewd or lascivious conduct . . . with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ."  To convict a defendant of this crime, the prosecution must prove the defendant committed "at least three acts of sexual misconduct with the child victim over at least three months . . . ."  (*People v. Rodriguez* (2002) 28 Cal.4th 543, 550; see *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1158 (*Valenti*); *People v. Mejia* (2007) 155 Cal.App.4th 86, 93-94 (*Mejia*).)

Lopez challenges the sufficiency of the evidence on the last element, that he abused Daniela and Rebecca for at least three months.  To prove the abuse occurred over at least three months, the "'prosecution need not prove the exact dates of the predicate sexual offenses . . . .'"  (*Valenti*, *supra*, 243 Cal.App.4th at p. 1158; see *Mejia*, *supra*, 155 Cal.App.4th at p. 97.)  "'Rather, it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts.  Generic testimony is certainly capable of satisfying that requirement, [but] "the victim must be able to describe *the*

17

*general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period."'" (*Valenti*, at p. 1158; see *People v. Jones* (1990) 51 Cal.3d 294, 316; *Mejia*, at p. 97.) "'That is, while generic testimony may suffice, it cannot be so vague that the trier of fact can only speculate as to whether the statutory elements have been satisfied.'" (*Valenti*, at p. 1158; see *Mejia*, at p. 97.)

"'When reviewing a challenge to the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt.' [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.'" (*People v. Navarro* (2021) 12 Cal.5th 285, 302; see *People v. Morales* (2020) 10 Cal.5th 76, 88.) "'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence."'" (*Navarro*, at p. 302; see *People v. Flores* (2020) 9 Cal.5th 371, 411.) "We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of evidence." (*Navarro*, at p. 302; see *People v. Reed* (2018) 4 Cal.5th 989, 1006.)

### 2. *Substantial Evidence Supported Lopez's Conviction for Sexually Abusing Daniela*

Substantial evidence supported the jury's finding that Lopez abused Daniela over at least three months. Daniela testified Lopez touched her vagina five times, her buttocks more than once, and her chest. She specifically testified the abuse occurred for approximately five months, when she was seven and eight years old. She also stated during her 2018 interview with Detective Caldas, which occurred immediately after Lopez was arrested, the abuse occurred for more than five months.

Viewing her testimony in the light most favorable to the verdict, there was substantial evidence Lopez abused Daniela over at least three months. As the Supreme Court has frequently stated, "'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.'" (*People v. Brown* (2014) 59 Cal.4th 86, 106; see *People v. Elliot* (2012) 53 Cal.4th 535, 585; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) Daniela's testimony was neither physically impossible nor inherently improbable. And while her testimony about the length of time Lopez abused her was generic, she described the general time period during which the abuse occurred: over five months while she was seven and eight years old. Nothing more was required. (See *People v. Ramirez Ruiz* (2020) 56 Cal.App.5th 809, 832-833 [child's statement to a social worker that the defendant "had penetrated her private part with his own the previous Friday and had first done so three months earlier" was sufficient to support a conviction under section 288.5]; see also *People v. Jones, supra*, 51 Cal.3d at p. 316["Additional details regarding the time, place

or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction."].)

Lopez contends substantial evidence did not support the jury's finding he abused Daniela for at least three months because Daniela, when asked by counsel for Lopez whether "a lot" of her responses were "guessing," she responded, "Yeah." But it is not clear Daniela meant she was "guessing" about the length of time Lopez abused her. While Daniela had some trouble remembering the details of the abuse that occurred years before Lopez fled to Mexico and then returned to the United States, she consistently maintained the abuse occurred for five months—both during her trial testimony and during her interview with Detective Caldas. The jury reasonably could infer that, while Daniela was making an educated guess about some facts, she was not guessing about the length of time the abuse occurred. (See *People v. Salazar* (2016) 63 Cal.4th 214, 242 ["""An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise."""].)

### 3. *Substantial Evidence Supported Lopez's Conviction for Sexually Abusing Rebecca*

Substantial evidence also supported the jury's finding that Lopez abused Rebecca over at least three months. Rebecca initially testified the abuse occurred for a "long time." When asked by the prosecutor how many months the abuse occurred,

Rebecca responded "about a couple," which she clarified to mean "three or four."

The prosecutor later asked Rebecca: "From the time of the first time you were, we'll say, touched in a sexual manner, to the last time that you were touched, do you think there were more or less than three months between those times?" Rebecca responded: "I don't understand that question. I'm sorry." The prosecutor asked the question again, using almost identical words, and Rebecca responded, "No." Rebecca then testified:

"Q: How much time do you think passed between the first time he touched you and the last time he touched you sexually?

"A: It was just a couple months.

"Q: Can you give us estimate? Was it more than less than two?

"A: It was more than two, so three.

"Q: And do you know— I don't want you to guess—but do you know if it was more or less than three, if you could tell us?

"A: About everything that happened after—

"Q: Correct. From the first touching to the last one?

"A: It was—yeah, a good two, three months that—from the first time to the last."

Lopez argues this testimony showed Rebecca could not remember whether the abuse in fact occurred for at least three months. The People also admit that at least one incident Rebecca described during her testimony was not lewd or lascivious conduct under section 288.[7] Therefore, according to Lopez, it was

---

[7]     Rebecca testified that, because Lopez was continuing to abuse her, she stopped wearing skirts and dresses and started wearing pants. Rebecca described an incident where Lopez

21

speculative for the jury to infer that, when Rebecca testified the abuse occurred for two to three months, she was referring to two to three months between instances of lewd or lascivious conduct under section 288.5.

While Lopez identifies some potential weaknesses in the People's evidence, our role is not to determine whether those weaknesses could have caused a rational trier of fact to have a reasonable doubt. As discussed, we ask only "'"'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential element[ ] . . . beyond a reasonable doubt."'"'" (*People v. Navarro*, *supra*, 12 Cal.5th at p. 302.) And a rational trier of fact could have believed Rebecca's initial testimony that the abuse occurred for three to four months over her later testimony that the abuse occurred for two or three months. (See *People v. Collins* (2021) 65 Cal.App.5th 333, 345 ["[a]s a general matter, juries may accept some parts of a witness's testimony and reject other parts"].) "'[I]t is for the trier of fact to consider internal inconsistencies in testimony' [citation] and it is for us when reviewing for substantial evidence to resolve the inconsistencies in favor of the verdict." (*Ibid*.; see *People v. Brown*, *supra*, 59 Cal.4th at p. 106 ["'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'"].) That Rebecca's testimony was equivocal in part does not change the fact it was sufficient to support the verdict. (See *People v. Smith* (2011) 198 Cal.App.4th 415, 427 ["[w]hile it is true that there was some contradictory evidence concerning the extent of

picked her up, asked her why she was wearing pants, and told her to change into a skirt. Rebecca did not remember Lopez touching her inappropriately during this incident.

22

defendant's molestation of Doe when she was eight years old," Doe's testimony, though "internally inconsistent," still "constituted substantial evidence that defendant's molestation of Doe when she was eight years old involved substantial sexual conduct"]; *People v. Cortes* (1999) 71 Cal.App.4th 62, 73-74 [substantial evidence supported the defendant's conviction for rape, even though "the victim gave inconsistent and conflicting testimony"]; *People v. Tereno* (1962) 207 Cal.App.2d 246, 251 [the "'mere fact that there are contradictions and inconsistencies in the testimony of a witness, or that the truth of his evidence is open to suspicion, does not render it inherently improbable'"].) Resolving any inconsistencies in Rebecca's testimony in favor of the verdict, substantial evidence supported the jury's finding the abuse occurred for at least three months.

Moreover, there was at least one reason for the jury to find Rebecca's initial estimate of how long the abuse occurred more credible:  Rebecca was confused when she stated the abuse occurred for two or three months.  When first asked by the prosecutor, Rebecca stated, without apparent hesitation, the abuse occurred for three or four months.  But when asked whether there were "more or less than three months" from "the first time" she was "touched in a sexual manner to the last time," Rebecca, before attempting to answer the question, admitted she did not understand it.  The jury reasonably could find her initial testimony was stronger evidence.  (See *People v. Myers* (1981) 125 Cal.App.3d 735, 745, fn. 4 ["confusion or lack of clarity on the part of a witness does not make that witness' testimony inherently improbable"], disapproved on another ground in *People v. Wolcott* (1983) 34 Cal.3d 92, 101.)

In addition, there was evidence corroborating Rebecca's statement the abuse occurred for three to four months (or perhaps longer). Karen testified Lopez generally babysat the girls a few times a month for several years. During her 2018 interview with Detective Caldas, Daniela said that, on days Lopez did not abuse her (which Daniela estimated was every other day Lopez babysat them), she saw Lopez take Rebecca into a room. Daniela stated this conduct occurred during the same five months Lopez abused her, from which the jury reasonably could have inferred Lopez abused Rebecca during the same five months he abused Daniela.

*Mejia*, *supra*, 155 Cal.App.4th 86, on which Lopez primarily relies, is distinguishable. In that case the jury convicted the defendant of abusing the victim between June 1, 2004 and September 17, 2004.[8] (*Id.* at p. 93.) The victim testified the defendant began abusing her sometime in June, continued abusing her through July, and abused her twice in September. (*Id.* at pp. 94-95.) The court in *Mejia* held the victim's testimony was not substantial evidence the abuse occurred for at least three months because "the jury could only speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004" and "there was no evidence as to when defendant abused [the victim] in September." (*Id.* at p. 95.) Here, in contrast, Rebecca specifically testified

_____

8 As stated, section 288.5 applies only where a person engages in three or more acts of sexual abuse with a child "under the age of 14 years at the time of the commission of the offense." (See § 288.5, subd. (a).) The victim in *Mejia* turned 14 on September 18, 2004. (*Mejia*, *supra*, 155 Cal.App.4th at p. 94.)

24

Lopez abused her for three to four months. And as discussed, there was evidence corroborating her testimony.[9]

C.  *Remand Is Appropriate for the Trial Court To Exercise Its Discretion Whether To Impose Consecutive or Concurrent Sentences*

Lopez argues the trial court failed to recognize it had discretion to impose concurrent sentences on his two convictions. The court sentenced Lopez under the one strike law in section 667.61, which "'mandates an indeterminate sentence of 15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony sex crime [citation] and has also found certain factual allegations to be true.'" (*People v. Carbajal* (2013) 56 Cal.4th 521, 534.) Section 667.61, subdivision (c), lists the crimes to which the one strike law generally applies. Continuous

---

[9]   Lopez also asserts substantial evidence did not support his conviction because Rebecca testified the abuse started when she was six years old. The People alleged Lopez abused Rebecca until February 8, 2010, which was approximately three months two weeks after Rebecca's sixth birthday. Therefore, according to Lopez, the jury could only speculate about whether the abuse occurred for at least three months. But a rational juror reasonably could infer that, when Rebecca testified she was six years old when Lopez started abusing her, she meant she was approximately six years old, not necessarily that he only abused her after her sixth birthday. And even if Lopez only abused Rebecca after her sixth birthday, there was still over three months for Lopez to abuse Rebecca. (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 729 [a reviewing court may reject testimony accepted by the trier of fact "'only when it is inherently improbable or incredible, i.e., "unbelievable per se," physically impossible or "wholly unacceptable to reasonable minds"'"].)

sexual abuse of a child in violation of section 288.5 is listed in section 667.61, subdivision (c)(9), as one of those crimes. The one strike law includes a provision requiring consecutive sentences for some, but not all, of the offenses listed in section 667.61, subdivision (c). That provision is section 667.61, subdivision (i), which states: "For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), . . . the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims . . . as defined in subdivision (d) of Section 667.6." Lopez contends that, because section 667.61, subdivision (c), states the court must impose consecutive sentences for offenses listed in subdivision (c)(1) to (7), and continuous sexual abuse of a child is specified in subdivision (c)(9), the trial court had discretion to impose concurrent sentences on his convictions.

Lopez's interpretation of section 667.61 is correct. "'The expression of some things in a statute necessarily means the exclusion of other things not expressed.'" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1105; accord, *People v. Gollardo* (2017) 17 Cal.App.5th 547, 557.) Because section 667.61, subdivision (i), requires a trial court to impose consecutive sentences for certain offenses in section 667.61, subdivision (c)—namely, those listed in subdivision (c)(1) to (7)—it does not require the court to impose consecutive sentences for other offenses in the statute—namely, subdivision (c)(8) and (9). (See *People v. Zaldana* (2019) 43 Cal.App.5th 527, 536 [because "section 288, subdivision (a) does *not* fall within [subdivision (c)(1)-(7)]—it is listed in section 667.61, subdivision (c)(8)— . . . the court retains discretion to impose concurrent *or* consecutive 25-year-to-life terms for the three violations of section 288, subdivision (a)"], review granted

26

Mar. 18, 2020, S259731.)  Section 667.61, subdivision (i), "by implication leaves the decision to impose consecutive or concurrent terms" for the nonspecified offenses in section 667.61, subdivision (c), "to the sentencing court's discretion under section 669."  (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524; see *People v. Bradford* (1976) 17 Cal.3d 8, 20 [under section 669 "a trial court has discretion to determine whether several sentences are to run concurrently or consecutively"]; *People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479-1480 [where a statute "does not contain an express provision depriving the trial court of the discretion afforded to it in section 669," the trial court has "discretion to choose between concurrent and consecutive sentences"].)  It's hard to imagine a clearer expression of legislative intent that the consecutive sentencing provision of section 667.61, subdivision (i), does not apply to all nine offenses listed in section 667.61, subdivision (c), than stating it only applies to seven of them.  (See *People v. Cook* (2015) 60 Cal.4th 922, 935 ["statutory language is the best indicator of the Legislature's intent"].)

The People ignore section 667.61, subdivision (i), entirely. Instead, they cite section 667.6, subdivision (d)(1), which provides:  "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims . . . ." Section 667.6, subdivision (e), includes continuous sexual abuse of a child in violation of section 288.5.  (See § 667.6, subd. (e)(6).) Therefore, according to the People, section 667.6 requires the court to impose consecutive sentences on multiple convictions for continuous sexual abuse of a child (presumably, regardless of what section 667.61 says).

27

The People's proposed interpretation of sections 667.6 and 667.61, however, renders section 667.61, subdivision (i), superfluous. When interpreting a statute, "we do not consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision'" at issue, and we "must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.'" (*People v. Mendoza* (2000) 23 Cal.4th 896, 907-908; see *People v. Hernandez* (2021) 60 Cal.App.5th 94, 105.) In so doing, "interpretations which render any part of a statute superfluous are to be avoided." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1207; see *People v. Cole* (2006) 38 Cal.4th 964, 980-981 ["The rules of statutory construction direct us to avoid, if possible, interpretations that render a part of a statute surplusage."]; *People v. Aguilar* (1997) 16 Cal.4th 1023, 1030 [courts "generally avoid a reading that renders any part of a statute superfluous"]; see, e.g., *People v. Foley* (2020) 56 Cal.App.5th 401, 410 [rejecting a proposed interpretation of section 667.61, subdivision (e)(4), because it "essentially eliminate[d]" a word from the statute and made it "entirely superfluous"].)

The legislative history confirms that section 667.61, subdivision (i), not section 667.6, subdivision (d), applies to sentencing under the one strike law. Prior to 2006, section 667.6, subdivision (d), required (as it does now) the court to impose consecutive sentences for certain sex crimes where the crimes involved separate victims or the same victim on separate occasions. (See former § 667.6, subd. (d), as amended by Stats. 2002, ch. 787, § 16.) At that time the one strike law did not

28

include a separate provision specifying when a trial court had to impose consecutive sentences. (See former § 667.61, as amended by Stats. 1998, ch. 936, § 9.) Thus, prior to 2006 it may have been unclear whether a trial court had to impose consecutive sentences when sentencing a defendant under the one strike law for offenses listed in section 667.6.

But in 2006 the Legislature enacted the Sex Offender Punishment, Control, and Containment Act, which among other changes added subdivision (i) to section 667.61. (See Stats. 2006, ch. 337, § 33.)[10] Section 667.61, subdivision (i), specified when a trial court had to impose consecutive sentences under the one strike law; it was (and still is) less inclusive than section 667.6, subdivision (d)(1). As amended, section 667.6, subdivision (d)(1), already required the court to impose consecutive sentences for each of the crimes specified in section 667.61, subdivision (i). (Compare former § 667.61, subds. (c)(1)-(7), (n)(1)-(6), as amended by Stats. 2006, ch. 337, § 33 with former § 667.6, subd. (e)(1)-(8), as amended by Stats. 2006, ch. 337, § 32.) Therefore, if the Legislature intended section 667.6, subdivision (d), to apply (or continue to apply) where the trial court sentenced a defendant under the one strike law, there would have been no need to add subdivision (i) to section 667.61. The Legislature could have decided not to add a sentencing provision when it amended section 667.61 in 2006, which would have left trial courts to apply section 667.6, subdivision (d)(1), when sentencing a defendant under the one strike law. But that's not what the Legislature

---

[10] The legislation also added continuous sexual abuse of a child to section 667.6, subdivision (e), thereby making the enhancements specified in section 667.6 applicable to that crime.

29

did. Instead, the Legislature added to the one strike law an independent sentencing provision that directs the trial court to impose consecutive sentences for some, but not all, of the crimes subject to the one strike law.[11]

The history of Senate Bill No. 1128, the bill that became the Sex Offender Punishment, Control, and Containment Act of 2006, also indicates section 667.61, subdivision (i), governs trial court discretion to impose consecutive or concurrent sentences under the one strike law. As amended on March 2, 2006, the bill added continuous sexual abuse of a child in violation of section 288.5 to the crimes specified in section 667.6, subdivision (e), and section 667.61, subdivision (d). Continuous sexual abuse of a child was initially listed in section 667.61, subdivision (c)(10), rather than in section 667.61, subdivision (c)(9). And section 667.61 initially did not include the provision later enacted as subdivision (i), listing the offenses for which the trial court had to

---

[11] Had the Legislature intended section 667.6, subdivision (d)(1), to apply whenever the trial court sentenced a defendant under the one strike law, the Legislature could have drafted section 667.61, subdivision (i), to read something like: "The court shall impose a consecutive sentence for each offense that results in a conviction under this section if required by section 667.6, subdivision (d)." (See *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language."]; *People v. Wilson* (2020) 53 Cal.App.5th 42, 52 [same].)

impose consecutive sentences.  (See Sen. Amend. to Sen. Bill No. 1128 (2005-2006 Reg. Sess.) §§ 30-31, Mar. 2, 2006.) [12]

But on May 26, 2006 the sponsor of the legislation introduced an amended version of the bill that added a new subdivision (i) to section 667.61 that, as discussed, specified when the trial court had to impose consecutive sentences under the one strike law.  (See Sen. Amend. to Sen. Bill No. 1128 (2005-2006 Reg. Sess.) §§ 32-33, May 26, 2006.)  The addition of new subdivision (i) to section 667.61 indicates the Legislature understood the one strike law was an "'alternative and harsher sentencing scheme for certain enumerated sex crimes'" (*People v. Acosta* (2002) 29 Cal.4th 105, 118; see *People v. Mancebo* (2002) 27 Cal.4th 735, 741), to which other sentencing rules and enhancements, such those in section 667.6, generally did not apply.  Thus, the Legislature had to add subdivision (i) to section 667.61 to prescribe when trial courts had to impose consecutive sentences under the one strike law.  (See Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.), as amended June 22, 2006, ¶ 84 [the bill "[s]pecifies that for certain crimes listed in the One-Strike sex statute, an offender must be

---

[12] The March 2, 2006 version of the bill would have added lewd or lascivious act in violation of section 288, subdivision (a), as section 667.61, subdivision (c)(9), and continuous sexual abuse of a child in violation of section 288.5 as section 667.61, subdivision (c)(10).  (See Sen. Amend. to Sen. Bill No. 1128 (2005-2006 Reg. Sess.) § 31, Mar. 2, 2006.)  The final version of the bill renumbered the paragraphs of the subdivision so that continuous sexual abuse of a child in violation of section 288.5 was listed as section 667.61, subdivision (c)(9).  (See Stats. 2006, ch. 337, § 33.)

sentenced consecutively if the crime involves separate victims or the same victim on separate occasions"].)

Because the trial court may not have recognized it had discretion to impose concurrent or consecutive sentences on Lopez's convictions for continuous sexual abuse of a child, remand is appropriate to allow the trial court to exercise that discretion.[13]  On remand, the court must state its reasons for imposing either concurrent or consecutive sentences.  (See Cal. Rules of Court, rule 4.406(b)(5).)

---

[13]  The trial court did not state why it was imposing consecutive sentences.  Although we ordinarily presume the trial court understood its sentencing discretion where the record is silent (*People v. Lee* (2017) 16 Cal.App.5th 861, 867), we decline to do so here because the application of section 667.6, subdivision (d)(1), to the one strike law was arguably unsettled, the court gave no indication it believed it had discretion to impose concurrent sentences, and the court did not state its reasons for imposing consecutive sentences.

32

## DISPOSITION

The convictions on both counts of continuous sexual abuse of a child are affirmed.  The sentences on those convictions are vacated, and the trial court is directed to exercise its discretion whether to impose consecutive or concurrent sentences on those convictions.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.